525 A.2d 870

Diamond Auto Leasing, Inc., Appellant *v.* Township of Cheltenham, Appellee.

Argued February 26, 1987, before Judges MACPHAIL and BARRY, and Senior Judge BLATT, sitting as a panel of three.

*Alan F. Markovitz, Markovitz, Luskus, Feinstein & Meo,* for appellant.

*Mark C. Clemm,* with him, *Gilbert P. High, Jr., High, Swartz, Roberts & Seidel,* for appellee.

OPINION BY JUDGE MACPHAIL, May 14, 1987:

Diamond Auto Leasing, Inc. (Appellant) appeals from an order of the Court of Common Pleas of Montgomery County which denied Appellant's motion for post-trial relief. We affirm.

The trial court relied on a stipulation of facts entered into by Appellant and the Township of Cheltenham (Township). A review of this stipulation reveals the following.

On December 17, 1968, the Township enacted a Mercantile License Tax. On December 30, 1976, it enacted a Business Privilege Tax.

Appellant has been engaged in the business of leasing automobiles since about January 1, 1977. Appellant conducts its business from a headquarters situated in the Township.

In general, prospective lessees contact Appellant by telephone and inquire as to the availability of particular

makes and models of automobiles, as well as options which may be desired and the financial terms upon which a lease for such automobiles may be arranged. There are no automobile dealerships in Cheltenham Township so Appellant contacts various automobile dealers in the surrounding area in an attempt to find the automobiles its customers desire. Lease agreements between Appellant and potential lessees are prepared by Appellant in the Township. In most cases, Appellant mails a lease agreement to a potential lessee who then executes the lease and returns it to Appellant by mail. In some cases the lessee will execute the lease agreement at Appellant's place of business. Approximately seventy-five percent of the time, the lessee will take possession of the automobile at the location of the dealer from whom it was obtained by Appellant. Approximately twenty-five percent of the time, the lessee will take possession of the automobile at Appellant's place of business. In some cases, Appellant will deliver the automobile to the lessee.

Appellant also provides its lessees with an auto repair service. Appellant entered into a contract with Spada's Auto Sevice to provide the repairs. Under the contract, Spada leases space from Appellant in which it performs annual state inspections, motor tune-ups, oil changes, brake work and similar maintenance work. The automobiles are brought to Appellant's premises and the work is performed by Spada. Spada makes a labor charge for such servicing at the rate of fifty percent of the Chilton Manual recommended rate. Spada bills Appellant for the work done on cars leased by Appellant to its clients. Appellant then adds fifty percent to the labor charge on such bills and forwards the total to the lessee of the automobile. The reduced rate charged by Spada to Appellant is the form of rent paid by Spada to Appellant for the space which it leases from Appellant.

When new parts are required for any repairs made by Spada, Spada purchases the parts in Appellant's name at fifteen to twenty percent discount. Appellant then reimburses Spada for the parts and bills the lessees for the parts at retail cost. The lessee remits the amount billed to Appellant.

On August 26, 1980, the Township filed suit alleging that Appellant was liable for Mercantile License and Business Privilege Taxes it had not paid. On November 1, 1985, the trial court ordered that Appellant was liable to pay the taxes on certain of its receipts and ordered that the taxes due for the tax years at issue be recalculated in accordance with its decision and paid by Appellant together with interest and any penalty due. On March 10, 1986, the trial court denied Appellant's motion for post-trial relief.

Appellant presents three issues to us on appeal.

First, Appellant avers that it owes no Business Privilege Tax on the receipts generated by leases which are executed outside the Township and where the cars are picked up by the lessees outside the Township. Appellant asserts that this is true because Section 2 of The Local Tax Enabling Act, Act of December 31, 1965, P.L. 1257, *as amended,* 53 P.S. §6902 authorizes townships and other municipalities to assess and collect taxes on "persons, transactions, occupations, privileges, subjects and personal property *within the limits of such political subdivisions."* (Emphasis added.) As such, it claims that the Township must differentiate between receipts generated on leases entered into within its borders and those executed by mail where the car is picked up outside the township. We disagree with Appellant's assessment of the law.

We feel that this issue is controlled by our Supreme Court's decision in *Gilberti v. City of Pittsburgh,* 511 Pa. 100, 511 A.2d 1321 (1986). The Appellant in

*Gilberti* was an architect who maintained one business office which was located in the City of Pittsburgh. Gilberti refused to pay Business Privilege Tax on gross receipts arising from activities conducted outside the city limits, such as inspection of construction sites. Gilberti argued that The Local Tax Enabling Act did not grant the City of Pittsburgh the power to tax the receipts from these activities. In rejecting this argument the Supreme Court stated:

Maintaining a business office in the City is an exercise of a privilege 'within the limits' of the taxing district, and, thus, a tax can thereupon be levied. In the present case, the City's Tax, labeled a tax on the 'privilege' of doing business in the City, operates in such a manner as to, in effect, tax revenues from certain transactions that occur wholly outside the City. This is so because the amount of the Tax is determined by the assessment of a millage rate against the gross receipts of the business, and such receipts include income derived from services performed at locations outside the City limits. Nevertheless, the tax remains one that is levied only upon a privilege exercised within the City, to wit maintenance of a business office, and the fact that the amount of tax is dependent upon the taxpayer's gross receipts, including receipts from services performed outside the City, does not undermine the legitimacy of the tax.

In support of this conclusion, it is to be emphasized that the plain language of the Enabling Act provides for taxes to be levied upon privileges within the City. In enacting such a provision, the legislature surely recognized that the exercise by a taxpayer of the privilege of doing business within a taxing jurisdiction constitutes

far more than the sum of individual transactions and activities which are consummated or performed within the territorial limits of the taxing entity. Indeed, having a place of business within the City enables the taxpayer to have a base of operations from which to manage, direct, and control business activities occurring both inside and outside the City limits. Further, the in-City office provides a place from which to solicit business, accept communications, conduct meetings, store supplies, and perform office work. All of these activities are, in the usual course, necessary to any business operation. This is so irrespective of whether the business performs services at job sites outside of the City.

In recognition of this, we believe the legislature has provided for the City to collect a tax upon the privilege of having a place of business in the City, and the measure of that tax is not to be so limited as to ignore the contribution to out-of-City activities provided by maintaining a base of operations within the City. The decision of Commonwealth Court to the contrary, therefore, must be reversed.

*Id.* at 108-9, 511 A.2d at 1326.

In the case at bar, Appellant's headquarters is in the Township. From this headquarters Appellant operates its business. A large part of its receipts is derived from transactions which are enacted, arguably, outside the borders of the Township. However, all of these transactions pass through the Appellant's office in the Township. It follows from the holding in *Gilberti,* that the maintenance of the office within the township gives the Township the right to levy a Business Privilege Tax on all of Appellant's receipts. The trial court did not err when it ordered that Appellant owed the Township

Business Privilege Tax on the receipts generated by all of its leases.

Appellant's second argument is that the trial court erred when it found that Appellant was liable to pay the Business Privilege Tax on all of the receipts that it collects as labor charge for repairs done by Spada—both the fifty percent it keeps as rent and the fifty percent it passes on to Spada.

The title of the Township ordinance which imposes the Business Privilege Tax states that it imposes "a Business Privilege Tax upon persons as defined in this ordinance engaged in certain businesses, trades, occupations and professions within the Township."[1] Article II, Section 1 of the ordinance defines "business, trades, occupations and professions" as "[a]ll business, trades, occupations and professions in which there is offered any service or services to the general public or a limited number thereof, including without limitation those enterprises engaged in by . . . repairers of . . . automotive machinery."[2]

Appellant does not object to being taxed on the fifty percent of repair receipts it keeps as rent. It admits that those receipts are taxable under an amendment[3] to the original Business Privilege Tax ordinance. It objects, however, to being taxed on the fifty percent it passes on to Spada. It argues that it does not offer the repair service but that it merely acts as a conduit to pass the money on to Spada.

In deciding this question we keep in mind that a taxing ordinance must be strictly construed. *See Golden Triangle Broadcasting, Inc. v. City of Pittsburgh*, 31

---

[1] Township of Cheltenham, Pa., Ordinance No. 1400 (Dec. 30, 1976).

[2] *Id.*

[3] Township of Cheltenham, Pa., Ordinance No. 1430 (Dec. 29, 1977).

Pa. Commonwealth Ct. 547, 377 A.2d 839 (1977), *aff'd*, 483 Pa. 525, 397 A.2d 1147 (1979); Section 1928(b)(3) of the Statutory Construction Act of 1972, 1 Pa. C. S. §1928(b)(3).[4]

Article II, Section 1 of the ordinance defines "service" as "[a]ny act or instance of benefiting another for a consideration."[5] Under this definition it is clear that the Appellant does offer an auto repair service to its lessees. The fact that it subcontracts this work out to Spada does not affect its tax liability for these receipts. The crucial point, we think, is that it is Appellant which offers the service "to the general public or a limited number thereof." Spada does not offer the repair service to the "public or a limited number thereof," it is merely the subcontractor for Appellant. If we accept Appellant's argument that it is not liable for the full amount of the repairs charged to its lessees, fifty percent of the charge would completely escape taxation. We feel that this is a result not intended by the ordinance. The trial court did not err when it held that Appellant was liable to pay Business Privilege Tax on the full amount of the receipts Appellant collected for car repairs.

Appellant makes a similar argument with respect to the Mercantile License Tax and its effect on the charges it makes to its lessees for parts. It claims that it is merely a conduit for the wholesale cost it passes on to Spada and that the 15% to 20% profit it makes by charging its lessees retail is the fruit of a financial—not "mercantile"

---

[4] "In a broad sense a municipal ordinance is a statute (Crawford, Statutory Construction, §3) and the rules of construction are the same as those applied in construing statutes of the legislature, to determine the intention of the municipal legislative body and to give it effect." *Marple Township v. Lynam*, 151 Pa. Superior Ct. 288, 291, 30 A.2d 208, 210 (1943).

[5] Township of Cheltenham, Pa., Ordinance No. 1400 (Dec. 30, 1976).

—transaction and therefore is not subject to the Mercantile License Tax. We disagree.

The Township's Mercantile License Tax Ordinance imposes the tax on "retail vendors." The parties have stipulated that Spada purchases the parts in Appellant's name for wholesale and that Appellant then sells the parts to its lessees at a profit. This is clearly a retail sale. The fact that Spada acts as Appellant's agent and buys the parts for Appellant does not affect Appellant's tax liability. Clearly, if Appellant itself bought the parts wholesale and made the same profit it would be liable to pay the tax. It would be absurd to say that Appellant can escape the tax merely by having another do the actual wholesale purchasing. The trial court did not err in determining that Appellant was liable for Mercantile License Tax for the receipts it received from its lessees for the purchase of auto parts.

We conclude that the trial court's order must be affirmed.

## ORDER

The order of the Court of Common Pleas of Montgomery County which denied Diamond Auto Leasing's motion for post-trial relief from an order holding that Diamond Auto Leasing must pay Business Privilege Tax and Mercantile License Tax on certain receipts, together with any interest and penalty due, is hereby affirmed.