535 A.2d 702

G. A. & F.C. Wagman, Inc., Appellant *v.* Manchester Township, Appellee.

Argued November 19, 1987, before Judges CRAIG and PALLADINO, and Senior Judge NARICK, sitting as a panel of three.

*Neal S. West,* with him, *John S. Oyler, McNees, Wallace & Nurick,* for appellant.

*David C. Keiter, Seidensticker, Keiter, Tarlow & Baughman, P.C.,* for appellee.

OPINION BY JUDGE CRAIG, January 7, 1988:

G. A. and F. C. Wagman, Inc. (Wagman) appeals an order of the Court of Common Pleas of York County which upheld Manchester Township's right to tax Wagman's gross receipts from intrastate business conducted outside the township, under the township's Business Privilege Tax Ordinance, No. 78-15 (ordinance). This is the second time this case has come before this court; in an earlier opinion[1] we held that the ordinance was an invalid extension of the township's power to tax transactions, occupations, and privileges under section 2 of the Local Tax Enabling Act[2] to the extent that it taxed gross receipts generated by services performed outside the township. Following applications for leave to appeal by both parties, the Supreme Court remanded the case to this court for reconsideration in light of its recent decision in *Gilberti v. City of Pittsburgh,* 511 Pa. 100, 511 A.2d 1321 (1986).

The issue before us remains whether the township may impose its business privilege tax upon receipts generated by Wagman's construction activities within the Commonwealth of Pennsylvania, but outside of Manchester Township.

Wagman is a Pennsylvania corporation engaged in highway construction throughout the mid-Atlantic states. The company's sole permanent office and corpo-

---

[1] *Wagman v. Manchester Township,* 98 Pa. Commonwealth Ct. 241, 511 A.2d 255 (1986).

[2] Act of December 31, 1965, P.L. 1257, *as amended,* 53 P.S. §6902.

rate headquarters is located in Manchester Township. Since 1979, the majority of Wagman's business has been performed outside of township limits.

On January 1, 1979, the township imposed a business privilege tax of one mill on each dollar of volume of gross annual receipts. Wagman paid taxes based on gross receipts of its interstate and intrastate business in 1979 and 1980, and on its intrastate revenue in 1981. In 1982, Wagman sought a refund for taxes paid in 1979 and 1980. When the township denied the refund claim, Wagman brought an action for declaratory judgment that it was not required to pay the tax on receipts generated by services performed outside Pennsylvania, or within Pennsylvania but not within the township.

The trial court held that Wagman was entitled to a refund for that portion of taxes paid in 1979 and 1980 attributable to interstate gross receipts, but that it was liable for the privilege tax on its intrastate receipts. The township did not appeal the trial court's order. Wagman did appeal to this court that portion of the order which upheld the privilege tax on intrastate receipts.

In our earlier opinion, this court ruled that the township could not tax gross receipts generated by services performed outside of the township. However, soon after our decision, the Supreme Court overruled our holding in *Gilberti,* and held that a business privilege tax could be imposed upon a taxpayer's gross receipts, including that portion attributable to services performed outside of the taxing district. Reconsidering this case in light of *Gilberti,* we now reverse our earlier decision.

A local government's authority to enact a business privilege tax is governed by section 2 of the Local Tax Enabling Act, 53 P.S. §6901, which provides in pertinent part:

The duly constituted authorities of the following political subdivisions, cities of the second

class, cities of the second class A, cities of the third class, boroughs, towns, townships of the first class, townships of the second class, school districts of the second class, school districts of the third class, and school districts of the fourth class, in all cases including independent school districts, may, in their discretion, by ordinance or resolution, for general revenue purposes, levy, assess and collect or provide for the levying, assessment and collection of such taxes as they shall determine on persons, transactions, occupations, privileges, subjects and personal property within the limits of such political subdivisions. . . .

Section 103 of the township ordinance imposes an annual tax of one mil per dollar of gross receipts for every person engaging in business in the township. The definition of "business" in section 102(c)(1) includes construction and "making sales to persons or rendered [sic] services from or attributable to a Manchester Township office or place of business." Section 102(f)(5) excludes from taxable gross receipts

(5) Receipts or that portion thereof attributable to interstate or foreign commerce or to an office or place of business regularly maintained by the taxpayer, outside the limits of the Township of Manchester, and not for the purpose of evading payment of this tax and those receipts which the Township of Manchester is prohibited from taxing by law. Such receipts shall be segregated as set forth in Section 104(c) of this Ordinance.

The trial court noted that this section specifically exempted receipts attributable to interstate commerce from taxation, and held that Wagman was entitled to a refund for that portion of taxes paid in 1979 and 1980

which was attibutable to work done outside of Pennsylvania. Because the township did not appeal this ruling, the issue of subjecting receipts from services performed by Wagman outside of Pennsylvania to the tax, and any attendant constitutional ramifications, is not before us.

Instead, we are presented with the question posed by the Supreme Court in *Gilberti:* May a local government impose a business privilege tax upon the entire intrastate gross receipts of a taxpayer, including receipts derived from services rendered outside the city limits, when the taxpayer's sole business office is located within the taxing district? Wagman argues that the majority of its receipts are produced by business and services rendered outside of the township, that only receipts from work performed within the township can be fairly attributed to its home office, and that section 2 of the Act only allows the township to impose a tax on the privilege of doing business within township limits, not on receipts generated by business conducted beyond those limits. We believe that the Supreme Court's analysis in *Gilberti* responds to all of these arguments.

Gilberti, an architect who maintained one business office in the City of Pittsburgh, refused to pay a business privilege tax on gross receipts arising from activities conducted outside city limits. Gilberti argued that, by taxing receipts for services performed outside of its boundaries, the city exceeded the authority granted under section 2 of the Act, which grants the power to tax "transactions" and "privileges" that are within the political subdivision. In rejecting Gilberti's argument, the Supreme Court stated that the privilege of doing business in the city could be taxed only to the extent that the exercise of the privilege occurs within the city. The court explained:

> Maintaining a business office in the City is an exercise of a privilege 'within the limits' of the

taxing district, and, thus, a tax can thereupon be levied. In the present case, the City's Tax, labeled a tax on the 'privilege' of doing business in the City, operates in such a manner as to, in effect, tax revenues from certain transactions that occur wholly outside the City. This is so because the amount of the Tax is determined by the assessment of a millage rate against the gross receipts of the business, and such receipts include income derived from services performed at locations outside the City limits. Nevertheless, *the tax remains one that is levied only upon a privilege exercised within the City, to wit maintenance of a business office, and the fact that the amount of tax is dependent upon the taxpayer's gross receipts, including receipts from services performed outside the City, does not undermine the legitimacy of the tax.*

In support of this conclusion it is to be emphasized that the plain language of the Enabling Act provides for taxes to be levied upon privileges within the City. In enacting such a provision, the legislature surely recognized that *the exercise by a taxpayer of the privilege of doing business within a taxing jurisdiction constitutes far more than the sum of individual transactions and activities which are consummated or performed within the territorial limits of the taxing entity.* Indeed, having a place of business within the City enables the taxpayer to have a base of operations from which to manage, direct, and control business activities occurring both inside and outside the City limits. Further, the in-City office provides a place from which to solicit business, accept communications, conduct meetings, store supplies, and perform office work. *All of*

*these activities are, in the usual course, necessary to any business operation. This is so irrespective of whether the business performs services at job sites outside of the City.*

In recognition of this, we believe the legislature has provided for the City to collect a tax upon the privilege of having a place of business in the City, and the measure of that tax is not to be so limited as to ignore the contribution to out-of-City activities provided by maintaining a base of operations within the City.

*Gilberti*, 511 Pa. at 108-09, 511 A.2d at 1326 (emphasis added).

Wagman argues that its situation is distinguishable from that presented in *Gilberti*. First, Wagman notes that Gilberti was an individual architect whose sole office was in Pittsburgh, while Wagman, a construction corporation, operates in many locations and through many employees. Wagman also claims that, unlike Gilberti's office, its Manchester Township office does not manage and control all aspects of the company's business; individual projects are often supervised by temporary, on-site offices. Because of the dispersed nature of its construction business, where many employees have little or no direct contact with the home office, and payments for services are often received outside of the township, Wagman contends that the receipts for services performed outside of the township cannot be fairly attributed to its Manchester Township office, and therefore, are not subject to the tax.

Wagman's distinctions are not persuasive. Like Gilberti, Wagman maintains only one permanent office from which it conducts business: corporate headquarters in Manchester Township. The fact that Wagman's employees perform services outside of the township, or that payment for services might be deposited in banks

outside of the township does not negate the fact that the root of all of the company's business is at its sole permanent business headquarters. To paraphrase the words of Judge ROGERS in *Borough of Brookhaven v. Century 21*, 57 Pa. Commonwealth Ct. 211, 425 A.2d 466 (1981) (ROGERS, J. dissenting), Wagman is not exercising the *taxed privilege* of maintaining a business office in any other jurisdiction; therefore, there is nothing improper in taxing receipts from services performed both in and outside the township.[3]

Wagman's situation, in which the majority of its construction services are performed outside of the township, is analogous to that in *Diamond Auto Leasing v. Township of Cheltenham*, 106 Pa. Commonwealth Ct. 161, 525 A.2d 870 (1987), where an automobile leasing company maintained a single business office within the township, yet derived much of its receipts from transactions enacted outside of the township. This court held that, under *Gilberti*, the maintenance of the business office within the township gave the township the right to levy its business privilege tax on all of the company's receipts.

Wagman also raises arguments that the ordinance violates the commerce clause of article 1, §8, of the United States Constitution, in that it does not have an apportionment mechanism. We disagree. In *O. H. Martin Co. v. Borough of Sharpsburg*, 376 Pa. 242, 102 A.2d 125 (1954), the Pennsylvania Supreme Court held that:

---

[3] To protect against the possibility of double taxation of intrastate receipts, the township ordinance permits taxpayers to exclude receipts "attributable to an office or place of business outside the limits of Manchester Township," which might be subject to the business privilege tax of another Pennsylvania taxing district. Ordinance section 102(f)(5).

[M]erely because a portion of the receipts of a business is derived from interstate transactions does not preclude assessment and collection of a tax on its intrastate activities. McGoldrick v. Berwind-White Coal Mining Co., 309 U.S. 33, 60 S.Ct. 388, 84 L.Ed. 565; Keystone Metal Co. v. School Dist. of Pittsburgh, 374 Pa. 323, 97 A.2d 797.

376 Pa. at 244-45, 102 A.2d at 126.

The *Martin* court relied on the opinion in *Dravo Contracting Co. v. James,* 114 F.2d 242, (4th Cir. 1940), *cert. denied,* 312 U.S. 678 (1941), in which the Fourth Circuit upheld a West Virginia tax on the plaintiff's gross receipts from construction of locks and dams on navigable rivers in West Virginia, even though these projects were related to interstate commerce. The *Dravo* court stated:

The tax here is not upon a unitary enterprise conducted in several states, but upon the business of contracting conducted in West Virginia, and income derived from that business is properly subject to taxation by that state. Only 'upon receipts in other states for work done in other states' is the tax not assessable.

114 F.2d at 246.

Similarly, the *Martin* panel held:

In the present ordinance there is no intention to tax receipts from interstate commerce, and the items being easily susceptible of separation, the borough may impose and collect the tax upon the receipts from intrastate business without the ordinance providing particular formulae of apportionment. See also Bowman v. Continental Oil Co., 256 U.S. 642, 41 S.Ct. 606, 65 L.Ed. 1139.

376 Pa. at 246, 102 A.2d at 127.

As noted by the trial court, section 102(f)(5) of the township ordinance specifically exempts receipts generated by a business' interstate commerce from the tax. Under these circumstances, there is no commerce clause violation.

Finally, Wagman argues that section 102(f)(5) of the ordinance exempts even its intrastate highway construction receipts from the tax, because receipts generated by highway construction are necessarily related to interstate commerce. However, the tax at issue here is not a direct tax upon Wagman's construction activity, which arguably has a relationship to interstate commerce; rather, it is a tax upon the privilege of maintaining a business office within the township. The township's ordinance does not impermissibly burden interstate commerce by taxing a privilege solely exercised within its borders.

In summary, we find that, under the Supreme Court's analysis in *Gilberti,* Wagman is liable for the township's business privilege tax on its gross intrastate receipts, and that such a tax does not violate constitutional precepts.

### ORDER

NOW, January 7, 1988, the order of the Court of Common Pleas of York County in the above captioned matter is affirmed.