601 A.2d 1310

**LAWRENCE G. SPIELVOGEL, INC., Appellant,**

**v.**

**TOWNSHIP OF CHELTENHAM, Appellee.**

Commonwealth Court of Pennsylvania.

Argued March 5, 1991.

Decided Jan. 7, 1992.

Joseph T. Kelley, Jr., for appellant.

Jeffrey L. Abrams, for appellee.

Before McGINLEY and BYER, JJ., and BARRY, Senior Judge.

BYER, Judge.

Lawrence G. Spielvogel, Inc. appeals from the judgment of the Court of Common Pleas of Montgomery County in favor of the Township of Cheltenham. The township had filed a civil action to recover unpaid business privilege tax for 1984 and 1985. The trial court, after a bench trial, awarded the township $2,758.53. We affirm.

Spielvogel, a Pennsylvania corporation, was formed in 1970. Its only office is located in Cheltenham Township. Spielvogel provides consulting services in the area of struc-

tural engineering throughout the United States, Pennsylvania and the township.

In 1977, the township notified various businesses, including Spielvogel, of its newly enacted business privilege tax[1] on gross receipts earned as a result of services rendered within the Commonwealth or to a Pennsylvania buyer. Spielvogel paid this tax on its gross receipts between 1977 and 1984.

In 1984, Spielvogel questioned, for the first time, the township's authority to assess and collect tax on income earned outside the township but within the Commonwealth, as well as on income earned outside the Commonwealth, and requested refund forms for taxes previously paid on these amounts.[2] The township responded by assuring Spielvogel that, contrary to Spielvogel's belief, the township was acting within its authority under the provisions of the ordinance. The township maintained this position in continued correspondence with Spielvogel on the issue.

In October 1985, pursuant to article IX, section 2 of the ordinance, the township notified Spielvogel of its intention to audit Spielvogel's 1984 Mercantile/Business Privilege Tax return. The township retained an auditor who met

1. In 1976, the township enacted Ordinance No. 1400, which provided for the collection of business privilege tax. The ordinance provides, in article IV, section 1:

Every person engaging in a business, trade or occupation in the Township shall pay an annual business privilege tax for the year beginning January 1, 1977 and each tax year thereafter at the rate of two and one-half (2½) mills *on such person's gross receipts;* provided, however, that in no event shall the annual business privilege tax herein imposed be less than ten dollars ($10.00).

(emphasis added) (6a, 89a).

This ordinance was amended by Ordinance No. 1550, which raised the business privilege tax rate to four mills per dollar of gross receipts, and by Ordinance No. 1572, which imposed interest on taxes due and payable at a rate of 1.25% per month until the tax was paid, plus a 10% penalty.

2. After the decision of our Supreme Court in *Gilberti v. City of Pittsburgh*, 511 Pa. 100, 511 A.2d 1321 (1986), Spielvogel modified its position and now contends only that the township cannot impose its business privilege tax on revenues generated from services performed for parties outside the Commonwealth.

with Spielvogel; however, Spielvogel refused to permit the audit.[3]

Thereafter, in accordance with article IX, section 2 of the ordinance, the township estimated Spielvogel's tax for 1984.[4] When Spielvogel failed to pay the estimated tax, the township filed a complaint alleging that during 1984 and 1985, Spielvogel inaccurately reported gross receipts and failed to pay the proper amount of business privilege tax.

At trial, the parties stipulated to Spielvogel's gross receipts for 1984 and 1985. Based on these stipulated amounts, the township's tax collector calculated Spielvogel's tax liability as follows:

| 1984 | — | Gross Receipts | $177,246.00 |
|---|---|---|---|
| | | Tax at 4 Mills | $ 708.98 |
| | | 10% penalty | $ 70.90 |
| | | Interest at 1.25%/mo. | $ 485.70 |

**3.** Spielvogel refused to show its books to the auditor unless the auditor could demonstrate that she and her firm were registered to do business in the township and had paid the required business privilege tax.

**4.** The township estimated Spielvogel's 1984 tax at $480.00. After deducting a $288.00 credit and adding a penalty of $19.20, the total due for the year was $230.40. Although, Spielvogel claims that the township never estimated its tax for 1985, the letter of notification stated:

Article IX of Ordinance 1400 of Cheltenham Township pertaining to the Duties of Collector provides under Section 2 that the collector may, if not satisfied by the Return provided by any taxpayer, make an estimate of the tax due by such person and determine the amount due. In view of your position that you will not make your books subject to review by the auditors of the Township, I am, therefore, acting under the powers given me by the ordinance and estimating your gross income to be $120,000.00 for the year 1984.

As a consequence, the tax due by Lawrence G. Spielvogel, Inc. is $480.00 against which you have a credit of $288.00. Consequently, there is a balance due of $192.00 for 1984, plus a 10% penalty of $19.20 and interest on that sum to date of $19.20. Since your estimate is equal your actual, your estimated payment should be $480.00, the penalty $48.00 and the interest $48.00 for *a total payment due of $806.40, which is covering the balance due for 1984 of $230.40 and $575.00 covering the estimate due for 1985.*

Kindly send me a check in this amount by the 10th of this month. Otherwise, suit will be instituted and your cooperation will be sincerely appreciated.

. (emphasis added) (85a).

| | Total 1984 | $ 1,265,58 |
|---|---|---|
| 1985 — | Gross Receipts | $272,304.00 |
| | Tax at 4 mills | $ 1,089.22 |
| | 10% penalty | $ 108.92 |
| | Interest at 1.25%/mo. | $ 582.81 |
| | Total 1985 | $ 1,780.95 |
| | Combined total | $ 3,046.53 |
| | less 1984 payment credit | $ (288.00) |
| | Total due | $ 2,758.53 |

(54a–56a).

As part of the stipulation to Spielvogel's gross receipts for 1984 and 1985, the parties agreed that the amounts included both interstate and intrastate receipts (45a). However, Spielvogel made no objection to the figures introduced by the township, or to the method used to calculate those amounts. Although Spielvogel claimed no tax liability for revenues generated outside Pennsylvania, it offered no evidence to demonstrate which portion, if any, of the gross receipts were earned outside the Commonwealth.[5]

Applying the language of the ordinance, the trial court held that Spielvogel, as a taxpayer claiming exemption for receipts derived from interstate services, failed to satisfy its burden to prove its entitlement to that exemption.

On appeal, Spielvogel contends that the trial court erred because: (1) a business privilege tax based upon all gross revenues, including interstate revenue, is constitutionally invalid; (2) the taxpayer should not be made to bear the burden of proving that interstate receipts are exempt from the business privilege tax, or the amount of such receipts; (3) the township failed to follow the proper procedures under its ordinance and enabling legislation for assessing

5. Spielvogel presented no testimony. Its only evidence consisted of the letters reflecting the dispute between it and the township. This correspondence contained no breakdown of gross revenue to support Spielvogel's assertion that certain of its receipts were exempt from taxation under the ordinance because they were derived from interstate business.

and collecting the business privilege tax; (4) the township's figures for tax due were incorrectly computed; and (5) the verdict was not supported by legally sufficient evidence. We will discuss each argument in turn.

## A. Constitutionality

■ Spielvogel asserts that the trial court improperly interpreted the township's ordinance to permit it to levy a business privilege tax on gross receipts derived from interstate services, in violation of the commerce clause, article 1, section 8 of the United States Constitution. We disagree.

The trial court did not reach this issue. The trial judge stated: "Because [Spielvogel] never presented any evidence showing which, if any, of its revenues were interstate receipts, the court never reached the issue of whether interstate revenues could, in fact, be subject to the business privilege tax." (Trial court opinion, 8). However, as previously noted, the parties stipulated that Spielvogel's gross receipts for 1984 and 1985 included interstate receipts. Therefore, Spielvogel is entitled to raise this question.[6]

In *Gilberti v. City of Pittsburgh,* 511 Pa. 100, 511 A.2d 1321 (1986), a Pittsburgh architectural firm challenged the city's authority under section 2 of The Local Tax Enabling Act, Act of December 31, 1965, P.L. 1257, *as amended,* 53 P.S. § 6902, to impose its business privilege tax, measured by gross revenues, on receipts derived from services the taxpayer performed outside the city. The taxpayer reported its tax liability by excluding from total gross receipts income generated from a project outside the city. The city deemed the exclusion improper, and made a deficiency assessment.

Although conceding that out-of-city "transactions" could not be taxed within the scope of the taxing power, the Supreme Court upheld the tax as an exercise of the city's authority to tax "privileges."

---

**6.** Spielvogel's failure to introduce evidence showing the amount of its interstate receipts has other ramifications.

*Gilberti* held that "[m]aintaining a business office in the City was an exercise of a privilege 'within the limits' of the taxing district." *Id.*, 511 Pa. at 108, 511 A.2d at 1326. *Gilberti* concluded that the city legitimately could levy a tax on the privilege of doing business in the city, even when that tax operated to tax revenues from transactions occurring wholly outside the city limits. The Supreme Court reasoned:

> In support of this conclusion it is to be emphasized that the plain language of the Enabling Act provides for taxes to be levied upon privileges within the City. In enacting such a provision, the legislature surely recognized that the exercise by a taxpayer of the privilege of doing business within a taxing jurisdiction constitutes far more than the sum of individual transactions and activities which are consummated or performed within the territorial limits of the taxing entity. Indeed, having a place of business within the City enables the taxpayer to have a base of operations from which to manage, direct, and control business activities occurring both inside and outside the City limits.

> In recognition of this, we believe the legislature has provided for the City to collect a tax upon the privilege of having a place of business in the City, and the measure of that tax is not to be so limited as to ignore the contribution to out-of-City activities provided by maintaining a base of operations within the City.

*Id.*, 511 Pa. at 109, 511 A.2d at 1326.

We followed the *Gilberti* rationale in an interstate commerce setting in *G.A. & F.C. Wagman, Inc. v. Manchester Township*, 112 Pa.Commonwealth Ct. 357, 535 A.2d 702 (1988). In *Wagman*, the corporate taxpayer was engaged in highway construction throughout the mid-atlantic states, but with its sole, permanent business headquarters in Manchester Township. Following *Gilberti*, we held that the maintenance of its home office in Manchester Township as the root of all the company's business, gave the township the right to levy its business privilege tax on all of the corporation's receipts, unless to do so would violate the

commerce clause. *See also Diamond Auto Leasing v. Township of Cheltenham,* 106 Pa.Commonwealth Ct. 161, 525 A.2d 870 (1987).

These cases are applicable here. Like the taxpayers in *Gilberti* and *Wagman,* Spielvogel's only business office is located within the township. Thus, it enjoys the privilege of conducting all its activities from its established base of operations in the township; the fact that a portion of Spielvogel's revenues may be derived from interstate receipts does not alter this benefit.

Although it is undisputed that it is constitutionally impermissible for a political subdivision to impose a direct tax upon the privilege of conducting interstate commerce, *General Foods Corp. v. City of Pittsburgh,* 383 Pa. 244, 118 A.2d 572 (1955); *O.H. Martin Co. v. Borough of Sharpsburg,* 376 Pa. 242, 102 A.2d 125 (1954); *Wagman,* this prohibition does not invalidate a business privilege tax imposed by a political subdivision. "[M]erely because a portion of the receipts of a business is derived from interstate transactions does not preclude assessment and collection of a tax on its intrastate activities." *O.H. Martin,* 376 Pa. at 244–45, 102 A.2d at 126.

A business privilege tax is not a direct tax on interstate commerce; "rather, it is a tax upon the privilege of maintaining a business office within the township. The township's ordinance does not impermissibly burden interstate commerce by taxing a privilege solely exercised within its borders." *Wagman,* 112 Pa.Commonwealth Ct. at 367, 535 A.2d at 706. Here too, the township is not taxing Spielvogel's business activities from any source; it is taxing Spielvogel's business office presence in the township.

Although conceding that the business privilege tax does not tax interstate commerce directly, Spielvogel contends that the township has exceeded constitutional bounds by imposing its tax on mixed interstate and intrastate revenues without supplying a means for separating the two types of receipts.

The courts consistently have upheld such taxes imposed on income derived partly from out-of-state activities without provision for apportionment. *See Dravo Contracting Co. v. James,* 114 F.2d 242 (4th Cir.1940); *Wagman; Martin.* As long as the intent of the taxing ordinance is to tax intrastate and not interstate receipts, and the two are separable, the constitutional prerequisites have been met. As our Supreme Court in *Martin,* relying on the opinion in *Dravo,* stated:

> In the present ordinance there is no intention to tax receipts from interstate commerce, and the items being easily susceptible of separation, the borough may impose and collect the tax upon receipts from intrastate business without the ordinance providing particular formulae of apportionment.

*Martin,* 376 Pa. at 246, 102 A.2d at 127. *See also Bowman v. Continental Oil Co.,* 256 U.S. 642, 646, 41 S.Ct. 606, 607, 65 L.Ed. 1139 (1921); *Wagman,* 112 Pa.Commonwealth Ct. at 366, 535 A.2d at 706.

That the ordinance here was intended to tax only intrastate income is apparent from its definition of gross receipts.[7] With respect to separability, the ordinance provides a means by which taxpayers can claim the exemption of particular revenues by presenting supporting evidence.[8]

We find it curious and contradictory that Spielvogel claims that the township's ordinance must fail constitutionally because interstate and intrastate receipts are indistinguishable. In completing its tax forms for 1984 and 1985, Spielvogel appears to have done precisely what it now claims cannot be accomplished—it arrived at a figure for

---

**7.** The Ordinance defines gross receipts as follows:

Include both cash and credit transactions made by a person for services rendered, including both services, labor and any materials entered into or becoming component parts of the *services performed within the Commonwealth of Pennsylvania.*

(emphasis added) (68a, 89a).

**8.** Article IX, section 4 of Ordinance 1400 provides a means for any party claiming an exemption to the tax to prove the right to that exemption to the satisfaction of the collector.

(89a). *See* text *infra* p. 1316.

gross receipts which it represents as derived strictly from intrastate business.[9] However, Spielvogel made no attempt to assert these exemptions through the mechanism provided in the ordinance or during trial. Because the ordinance here was enacted to tax only the privilege of doing business in the township, we hold that under the ordinance, the township may calculate business privilege tax liability on a taxpayer's total gross receipts without violating constitutional dictates.[10]

### B. Burden of Proof

Spielvogel argues that the trial court erred in allocating to it the burden of proving the amount of receipts attributable to interstate revenues.

**9.** When Spielvogel filed his 1984 and 1985 business privilege tax returns, he reported only those gross receipts representing intrastate income, because these were the only amounts he believed were legally taxable under the ordinance. His calculations appeared as follows:

| | | |
|---|---|---:|
| 1984 — | Gross Receipts | $ 35,412.00 |
| | tax at 4 mills | $ 141.65 |
| | less 1984 payment credit | $ (288.00) |
| | Total 1984 | $ (146.35) |
| 1985 — | Gross Receipts | $ 35,412.00* |
| | tax at 4 mills | $ 141.65 |
| | less remaining credit | $ (146.35) |
| | Total 1985 | $ (4.70) |

(56a–57a).

* The 1985 business privilege tax form lists this figure as $44,881.00. (95a).

**10.** Our holding is consistent with *Complete Auto Transit, Inc. v. Brady,* 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977), in which the United States Supreme Court sustained a Mississippi tax. The Court in *Brady* held:

[W]e now reject the rule of *Spector Motor Service, Inc. v. O'Connor,* [340 U.S. 602, 71 S.Ct. 508, 95 L.Ed. 573 (1951) ] that a state tax on the 'privilege of doing business' is *per se* unconstitutional when it is applied to interstate commerce, and that case is overruled.
There being no objection to Mississippi's tax on appellant other than it was imposed on nothing other than the 'privilege of doing business' that is interstate, the judgement of the Supreme Court of Mississippi [upholding the tax] is affirmed.
*Brady,* 430 U.S. at 288–89, 97 S.Ct. at 1084.

First, Spielvogel contends that the township must bear this burden if it is to maintain the constitutionality of its ordinance. This reasoning is flawed, because it is premised on Spielvogel's assertion that the ordinance, in order to remain constitutional, can include only intrastate revenues in its calculation of gross receipts. As previously discussed, the inclusion of interstate revenues in the gross receipts figure does not invalidate the ordinance. Because all sources of revenue can be included in gross receipts, the burden can be allocated to the taxpayer to demonstrate which revenues are entitled to an exemption.

Second, Spielvogel contends that the trial court could not rely on article IX, section 4 of the ordinance to allocate the burden of proof to the taxpayer. Article IX, section 4 of the ordinance provides:

> The burden is hereby imposed upon any person, firm, or corporation claiming an exemption from the payment of tax hereby imposed to prove by clear and convincing evidence the legal right to such exemption to the satisfaction of the collector.

(89a).

As the trial court points out, this provision is consistent with the general rule placing the burden of proof on the taxpayer claiming entitlement to a tax exemption. *See Lehigh Valley Cooperative Farmers v. Commonwealth,* 498 Pa. 521, 447 A.2d 948 (1982); *Marwood Rest Home v. City of Philadelphia Tax Review Board,* 112 Pa.Commonwealth Ct. 240, 535 A.2d 281 (1987). Moreover, the burden of proof usually is allocated to the party possessing facts or evidence uniquely within its knowledge. *Barrett v. Otis Elevator Co.,* 431 Pa. 446, 246 A.2d 668 (1968).

Nevertheless, Spielvogel contends that the ordinance provision does not apply in its case because Spielvogel does not seek an exemption, but protests an illegal tax. The trial court dismissed this characterization as an attempt by Spielvogel to circumvent the explicit terms of the ordinance. We agree.

Because we have held that interstate revenues can be included in gross receipts, any claim that a portion of the total revenue should not be subject to tax is a claim of exemption from that tax.[11]

### C. Procedure

█ Spielvogel also argues that the township failed to follow the procedures mandated by its ordinance when it commenced a civil action to recover unpaid taxes without first conducting an audit of Spielvogel's receipts. The relevant portions of the ordinance provide:

Section 2. If the Collector is not satisfied with the return and payment of tax made by any taxpayer or supposed taxpayer under the provisions of this Article, the Collector is hereby authorized and empowered to make a determination of the tax due by such person, based upon the facts contained in the return or upon any information within the Collector's possession or that shall come into possession, and for this purpose the Collector or the deputy or authorized agent of the Collector is authorized to examine the books, papers and records of any such person to verify the accuracy of any return or payment made under the provisions hereof or to ascertain whether the taxes imposed by this Article have been paid. The Collector is hereby authorized and directed to make and keep such records, prepare such forms and take such other measures as may be necessary or convenient to carry this Article into effect, and may, in such officer's discretion require reasonable deposits to be made by persons who engage in a business which is temporary, seasonal or itinerant by its nature.

Section 3. If any taxpayer or supposed taxpayer shall neglect or refuse to make any return and payment of tax

11. Although the ordinance calls for a taxpayer seeking an exemption to prove his entitlement by clear and convincing evidence, the trial court reduced this standard and required instead that Spielvogel prove entitlement by a preponderance of the evidence. However, by offering no evidence at all on the issue, Spielvogel failed to meet even that lesser standard. We do not decide the question of whether an ordinance validly may establish a standard greater than preponderance of the evidence for this purpose.

required by this Article, or if, as a result of an investigation by the Collector, a return is found to be incorrect, the Collector shall estimate the tax due by such person and determine the amount due for taxes, penalties and interest thereon.

(89a).

Based upon its interpretation of these provisions, Spielvogel asserts that the sole procedure by which the township can collect taxes under its ordinance is to first, audit the taxpayer's records; second, if necessary, estimate the tax due; and finally, if not paid, sue for the estimated amount of tax. This interpretation is unfounded.

■ Although a taxing ordinance must be strictly construed, *Golden Triangle Broadcasting Company v. City of Pittsburgh*, 31 Pa.Commonwealth Ct. 547, 377 A.2d 839 (1977), *aff'd*, 483 Pa. 525, 397 A.2d 1147 (1979), under the principles of the Statutory Construction Act, 1 Pa.C.S. § 1903(a), the language of local ordinances, like that of state statutes, should be given its plain meaning. *Council of Middleton Township, Delaware County v. Benham*, 514 Pa. 176, 523 A.2d 311 (1987); *Tobin v. Radnor Township Board of Commissioners*, 142 Pa.Commonwealth Ct. 567, 597 A.2d 1258 (1991); *Township of Marple v. Lynam*, 151 Pa.Superior Ct. 288, 30 A.2d 208 (1943).

Section 2 of the ordinance provides that the collector is "authorized" to examine a taxpayer's books if dissatisfied with the tax return. This language is permissive rather than mandatory; granting license to act, but not demanding performance.

It was Spielvogel who refused to submit to an audit. The township, meanwhile, proceeded with its tax collection, estimating Spielvogel's tax, and finally commencing suit when Spielvogel persisted in his refusal to pay.

Spielvogel also contends that the township's efforts to collect Spielvogel's business privilege tax did not comply with the language of the Local Tax Enabling Act, 53 P.S.

§ 6902.[12] This enabling legislation empowers municipalities to "levy, assess and collect" taxes. Spielvogel argues that the township did not "assess" the tax due from Spielvogel, and is therefore not collecting pursuant to such assessment.

To support its argument, Spielvogel relies on *Lynch v. Owen J. Roberts School District,* 430 Pa. 461, 244 A.2d 1 (1968).[13] *Lynch* offers Spielvogel no assistance. The court in *Lynch* determined that the word "assess," under the local tax enabling act, meant "compute" rather than "value." Thus, the school district in *Lynch* was not permitted to attribute a value to property for the purpose of taxation, but was authorized, under the enabling act, to pass (levy) its tax, compute (assess) the amount owed by each taxpayer, and secure (collect) the tax revenue itself.

The township has not deviated from the holding in *Lynch.* The township has passed its tax ordinance, computed Spielvogel's tax liability—by attempting an audit, estimating the tax due, and finally basing the tax due upon Spielvogel's own stipulation—and now seeks to collect its tax revenue. These procedures do not stray from the provisions of either the ordinance or the enabling act.

 Spielvogel also argues that the township cannot sue for more than the amount of tax previously estimated. Spielvogel stipulated at trial to its actual receipts for 1984 and 1985. These amounts, and therefore the computed taxes based on these amounts, exceeded the collector's estimated figures; nevertheless, Spielvogel asserts that the township can collect no more than the estimated tax.

**12.** This provision authorizes local governments to enact a business privilege tax by providing that political subdivisions:

may, in their discretion, by ordinance or resolution, for general revenue purposes levy, assess and collect or provide for the levying, assessment and collection of such taxes as they shall determine on persons, transactions, occupations, privileges, subjects and personal property within the limits of such political subdivisions....

**13.** *Lynch* was questioned on other grounds in *Campbell v. Coatesville Area School District,* 440 Pa. 496, 270 A.2d 385 (1970); *Lal v. West Chester Area School District,* 71 Pa.Commonwealth Ct. 236, 455 A.2d 1240 (1983); and *American Family Life Assurance Co. v. Insurance Department,* 51 Pa.Commonwealth Ct. 247, 414 A.2d 166 (1980).

Like the trial court, we fail to find this limitation in the ordinance. On the contrary, Article X, section 1 of the ordinance provides:

All taxes due and unpaid under this Article shall be recoverable by the township solicitor as other debts due the township are now by law recoverable.

(89a).

Although it previously underestimated the tax due, we see no reason why the township cannot collect the tax amount actually owed by Spielvogel.

### D. Tax Computation

■ Spielvogel also argues that the township miscalculated Spielvogel's tax liability at trial, and that the trial court's acceptance of these calculations was error. First, Spielvogel argues that its tax credit should have been deducted from the 1984 tax before any penalty or interest was computed. Second, Spielvogel argues that penalties should not apply to either its 1984 or 1985 tax payments because the returns were filed promptly and in good faith.[14]

We decline to consider the merit of these arguments, because Spielvogel did not properly preserve them for our review. "In order to preserve an issue for appeal, a litigant must make a timely, specific objection at trial and must raise the issue on post-trial motions." *Reilly v. Southeastern Pennsylvania Transportation Authority*, 507 Pa. 204, 214, 489 A.2d 1291, 1296 (1985); *Redevelopment Authority of the City of Philadelphia v. Nunez*, 109 Pa.Commonwealth Ct. 240, 244, 530 A.2d 1041, 1043 (1987); Pa.R.A.P. 302(a). It is not enough to raise grounds for the first time in post-trial motions. *Reilly;* Pa.R.C.P. 227.1(b).

14. To support these allegations, Spielvogel relies on Township Ordinance No. 1572, Section 2 which provides:
All taxes due under this Article, *to the extent not offset by a credit owing the taxpayer* at the due date of such tax, shall bear interest. (emphasis added) (91a–92a).
That same section also provides that a 10% penalty is applicable to taxpayers who *neglect or refuse to make any return or payment* as required by the ordinance (92a).

At trial, the township's tax collector testified in detail concerning his computation. Yet, other than questioning the inclusion of interstate revenues in taxable gross receipts, Spielvogel offered no objection to any of the amounts presented or the methods used to calculate those amounts. Moreover, Spielvogel's own case consisted wholly of various exhibits, none of which made mention of this issue. Because Spielvogel failed to raise credit and penalty questions at any time before filing its post-trial motions, the issue is waived for purposes of appellate review.

Spielvogel's final allegation, that the trial court's verdict was contrary to the weight of the evidence, must also be dismissed as meritless.[15] Finding no basis to disagree with the trial court's analysis of the evidence before it, we affirm.

## ORDER

We affirm the order of the Court of Common Pleas of Montgomery County.

DATE: January 3, 1992.

This decision was reached and opinion adopted before the conclusion of Judge BYER's service.

---

**15.** We make this determination even though this issue was actually waived by Spielvogel because its post-trial motion purported to raise this question only by using "boiler-plate" language, without asserting specific reasons why the verdict allegedly is contrary to the weight of the evidence. This type of "boiler-plate," post-verdict motions are insufficient to preserve the matter for appeal. *Jackson v. Spagnola,* 349 Pa.Superior Ct. 471, 503 A.2d 944 (1986), *appeal denied,* 514 Pa. 643, 523 A.2d 1132 (1987).