**LAWRENCE J. SPIELVOGEL, INC., Plaintiff,**

v.

**TOWNSHIP OF CHELTENHAM, et al., Defendants.**

No. 95–CV–1637.

United States District Court, E.D. Pennsylvania.

Nov. 15, 1995.

234

Maralynne Flehner, King of Prussia, PA, for Plaintiff.

Joseph M. Bagley, Kenneth O. Spang, III, Wisler, Pearlstine, Talone, Craig, Garrity & Potash, Blue Bell, PA, for Defendants Twp. of Cheltenham, Damsker, Webb, Gash.

H. Robert Fiebach, Kevin M. Apollo, Cozen and O'Connor, Philadelphia, PA, for Defendants High, Abrams, Clemm/High, Swartz, Roberts & Seidel.

## MEMORANDUM AND ORDER

JOYNER, District Judge.

We address today the motions to dismiss filed by the defendants in this § 1983 case. For the reasons that follow, we conclude that we lack subject matter jurisdiction over the instant dispute, and as a result, we must dismiss the plaintiff's complaint.

## BACKGROUND

The plaintiff in this case is Lawrence J. Spielvogel, Inc. ("LGSI"), a Pennsylvania engineering consulting firm with its sole office located in Cheltenham, Pennsylvania, a Philadelphia suburb. During the time period relevant to this lawsuit, LGSI provided professional services to clients both within and outside of Pennsylvania. On December, 30, 1976, the Township of Cheltenham (the "Township"), one of the defendants in this case, promulgated Ordinance No. 1400, which imposed a registration fee and a business privilege tax on the gross receipts of any person or organization doing business in the Township. Neither Ordinance No. 1400 nor the regulation that superseded it on January 1, 1987, Ordinance No. 1639, explicitly permit taxpayers who do business outside of Pennsylvania to apportion their taxable revenue so as to exclude income derived from out-of-state sources. Both ordinances, however, provide a means by which a taxpayer can claim an exemption, pursuant to which the taxpayer bears the burden of demonstrating an entitlement to an exemption by clear and convincing evidence.[1]

---

1. Ordinance 1400, which was effective through December 31, 1986, provides in relevant part as follows:

   Every person engaging in a business, trade, occupation or profession in the Township shall pay an annual business privilege tax for the year beginning January 1, 1977 and each tax year thereafter ... on such person's gross receipts....

   Article IV, § 1. The Ordinance defines "gross receipts" as follows:

   Includes both cash and credit transactions made by a person for services rendered, including both services, labor and any materials entered into or becoming component parts of the services performed within the Commonwealth of Pennsylvania.

   Article II, § 1. Finally, Ordinance 1400 provided taxpayers with a means by which they could seek an exemption from taxation, as follows:

   The burden is hereby imposed upon any person, firm, or corporation claiming an exemption from the payment of tax hereby imposed to prove by clear and convincing evidence the legal right to such exemption to the satisfaction of the collector.

LGSI paid its business privilege tax pursuant to the ordinance from 1977 through 1984. Beginning in May of 1984, however, LGSI refused to pay the tax, arguing that it could not lawfully be required to pay a business privilege tax on revenue generated outside of Pennsylvania. As a result, in March of 1987, the Township initiated an action in the Court of Common Pleas of Montgomery County seeking to collect the business privilege tax for the years of 1984 and 1985, plus interest and penalties. *Township of Cheltenham v. Lawrence G. Spielvogel, Inc.*, Civ. No. 87–03963 (*"Spielvogel I"*). The Township was represented by members of the law firm of High, Swartz, Roberts & Seidel ("HSRS"), including Gilbert P. High, Mark C. Clemm and Jeffrey L. Abrams (collectively, the "Attorney Defendants"), who argued that the Township was entitled to tax all of LGSI's revenue, regardless of its place of origin.

On November 8, 1989, after a bench trial, the Court of Common Pleas ruled in the Township's favor, but failed to reach the question of whether the Township can lawfully tax income derived outside Pennsylvania. Instead, the court held that even if such taxation were deemed unlawful, LGSI could not prevail because it failed to produce evidence relating to the amount of revenue it generated out-of-state. After its post-trial motion was denied, LGSI appealed the decision to the Commonwealth Court, which affirmed the lower court's decision. *Lawrence G. Spielvogel, Inc. v. Township of Cheltenham*, 144 Pa.Cmwlth. 510, 601 A.2d 1310 (1992). Unlike the Court of Common Pleas, however, the Commonwealth Court addressed the question of the business privilege tax's constitutionality, noting that while the

constitution precludes a political subdivision from imposing a direct tax on the privilege of conducting interstate commerce, a business privilege tax is not invalid merely because a portion of the revenue is generated out-of-state. *Id.* 601 A.2d at 1314 (citations omitted). The court then held that "[a]s long as the intent of the taxing ordinance is to tax intrastate and not interstate receipts, and the two are separable, the constitutional prerequisites have been met." *Id.* 601 A.2d at 1315. Thus, the ordinance was not rendered invalid merely because it did not contain a provision for apportionment. Indeed, since the ordinance provided for a means by which a taxpayer could claim an exemption with respect to particular revenues, it met the separability requirement and therefore was within constitutional bounds. *Id.* 601 A.2d at 1315–16.

Meanwhile, the Township initiated a second action in the Court of Common Pleas against LGSI, seeking recovery of business privilege taxes on receipts generated from out-of-state activities during the tax years of 1986 through 1991, plus interest and penalties. *Township of Cheltenham v. Lawrence G. Spielvogel, Inc.*, Civ. No. 90–02702 (*"Spielvogel II"*). After the Commonwealth Court issued its decision in *Spielvogel I*, Mr. Spielvogel contacted Township officials in an attempt to demonstrate an entitlement to an exemption from taxation on revenue generated outside of Pennsylvania, but was told that unless LGSI paid the taxes on all gross receipts, as well as interest and penalties, the Township would move forward with the second action. LGSI refused this demand.

On April 28, 1993, LGSI renewed its offer to provide the Township with documentation

---

Article IX, § 4.

Effective January 1, 1987, the Township enacted Ordinance 1639, which superseded Ordinance 1400. Ordinance 1639 defines "gross receipts" as follows:

All gross receipts of cash, credit, or property of any kind or nature received in cash or credit transactions, allocable or attributable to the Township whether derived from within or outside the Township regardless of taxpayer's method of accounting, for services rendered by any business, trade, occupation or profession, without deduction therefrom on account of the cost of property sold, materials used, labor, service or other cost, interest or discount paid or any other expense.

Article II, § D. Moreover, Ordinance 1639 sets forth the nature of the exemption request procedure, as follows:

The burden of proof shall be on any person claiming not to be engaged in carrying on a business, trade, occupation or profession within the limits of the Township, or claiming any exemption from the provisions of this Ordinance, or denying liability for the tax imposed hereunder unless such person demonstrates by clear and convincing evidence not be [sic] liable for the tax assessed by the Collector pursuant to the provisions of the preceding Article IX herein.

Article X, § 1.

in support of its claim for an exemption for the tax years 1986 through 1991. The Township, through its attorneys, advised LGSI to assemble and furnish the supportive records. Accordingly, on May 20, 1993, LGSI presented the Township with the records needed to support its claim for an exemption, including monthly summaries of gross receipts by location for the entire six-year period. The Township then advised LGSI that it would need to provide additional information, but failed to specify the precise nature of the information it required. After LGSI contacted the Township with a request that it clarify its demand for further proof, the Township denied LGSI's claim for an exemption.

*Spielvogel II* was presented to an arbitration panel, which ruled against LGSI on the issue of the exemption. When LGSI appealed the arbitration panel's decision to the Court of Common Pleas, the Township stipulated that LGSI properly claimed and supported its request for an exemption for the portion of its gross receipts derived out-of-state, but argued that it was entitled to levy a tax on all receipts, regardless of where they were generated, without affording the taxpayer the opportunity to demonstrate an entitlement to an exemption. The Court of Common Pleas disagreed, and entered an order in LGSI's favor on December 27, 1994. Basing its decision on *Spielvogel I*, the court held that since the parties agreed that LGSI properly set forth a claim for an exemption, the Township's refusal to allow the exemption rendered the ordinance unconstitutional as applied. The Township elected not to appeal.

LGSI filed the instant complaint, which is 50 pages long and contains 327 averments, on March 21, 1995. It names as defendants not only the Attorney Defendants, who represented the Township throughout its 11–year battle with LGSI and allegedly assisted the Township in the drafting of the ordinances at issue, but also the Township and Ruth M. Damsker, William David Webb and Marsha

Gash, all of whom worked in the Township's Tax Collector's Office during the time period relevant to the lawsuit (collectively, the "Township Defendants"). Moreover, the complaint contains four claims, the first three of which are brought pursuant to 42 U.S.C. § 1983. In the first claim, LGSI asserts that all of the defendants conspired to deprive it of the rights secured to it by the commerce clause and the due process clause of the fourteenth amendment. LGSI alleges in the second and third counts that Defendants Damsker, Gash, High, Abrams, HSRS and the Township acted to deprive it of its rights under the commerce clause and the due process clause of the fourteenth amendment, respectively. Finally, in Count IV, LGSI asserts that Defendants Damsker, High, Abrams, Clemm, HSRS and the Township are liable to it under a malicious prosecution theory. For their part, the Attorney Defendants and the Township Defendants have both submitted separate motions to dismiss. In support of their motion, the Township Defendants argue, *inter alia*, that this Court lacks subject matter jurisdiction over the instant dispute. We turn now to address their argument.

### DISCUSSION

■ The Township Defendants call our attention to the Tax Injunction Act, 28 U.S.C. § 1341 (the "Act"), and argue that we must dismiss this action pursuant to Fed.R.Civ.P. 12(b)(1) for want of subject matter jurisdiction.[2] The Congress enacted the Act in 1937 for the purpose of "divesting the federal courts of jurisdiction to interfere with state tax administration." *California v. Grace Brethren Church*, 457 U.S. 393, 409 n. 22, 102 S.Ct. 2498, 2508 n. 22, 73 L.Ed.2d 93 (1982). Thus, the Act provides as follows: "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341.[3]

**2.** Rule 12(b) reads as follows:

Every defense, in law or fact, to a claim, counterclaim, cross-claim, or third party claim, shall be asserted in the responsive pleading thereto if one is required, except that the fol-

lowing defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter, ...

**3.** A tax imposed by a local government is a "tax under State law" for purposes of § 1341. *Keleh-*

Construing this statute, and the principle of comity[4] it embodies, the Supreme Court held that "taxpayers are barred by the principle of comity from asserting § 1983 actions against the validity of state tax systems in federal courts," and must pursue state remedies to vindicate their federal rights, as long as "those remedies are plain, adequate, and complete." *Fair Assessment in Real Estate Ass'n v. McNary*, 454 U.S. 100, 116, 102 S.Ct. 177, 186, 70 L.Ed.2d 271 (1981).[5]

■ Courts in this circuit have also had occasion to apply the rule. In *Long v. Kistler*, 524 F.Supp. 225 (E.D.Pa.1981), we commented on the Act as follows:

> This statute strictly limits federal jurisdiction by withholding from federal courts the power to decide otherwise permissibly justiciable claims and implicates the doctrines of equitable restraint, comity and abstention as well as the strong federal policy against interference with enforcement of state tax laws. The operation of this statute cannot be voided by including a claim under Section 1983 or a federal constitutional violation, by requesting declaratory rather than injunctive relief, or by attacking the administration or implementation of the scheme rather than the tax itself.

*Id.* at 226–27 (footnotes omitted). Indeed, the Third Circuit has held that principles of comity preclude a plaintiff from seeking money damages in a state tax case. *Sipe v. Amerada Hess Corp.*, 689 F.2d 396, 404 (3d Cir.1982). Likewise, in *Sunderland Properties, Inc. v. County of Berks*, 750 F.Supp. 704 (E.D.Pa.1990), we held that the doctrine of comity compelled us to dismiss a § 1983 action in which the plaintiffs challenged the reassessment of their real estate for property tax purposes. *Id.* at 711. The rule emerging from these cases is that a federal court

may entertain an injunctive, declaratory or damages action challenging the validity or administration of a state's taxation system only if there lacks a plain, speedy and efficient remedy at the state level. *Balazik v. County of Dauphin*, 44 F.3d 209, 217 (3d Cir.1995); *see Keleher v. New England Tel. & Tel. Co.*, 947 F.2d 547, 548 (2d Cir.1991) (holding that "the Act creates an absolute jurisdictional bar to federal involvement in local revenue collection schemes").

■ LGSI does not dispute the fact that an adequate state remedy exists, but argues that:

> The validity of the ordinances and the constitutionality of defendants' denial of plaintiff's claim for an exemption have already been litigated in the state courts and are not in issue here. Rather, in the instant action, plaintiff seeks to recover damages on the grounds that defendants conspired to and did deprive it of its constitutional rights by failing and refusing to recognize the existence of an exemption for out-of-state receipts, by failing and refusing to afford plaintiff a fair opportunity to seek and/or obtain exemptions, and by prosecuting Spielvogel I and II with malice and without probable cause to believe that plaintiff was required to pay business privilege taxes on its out-of-state receipts in the absence of being afforded a right to apportion.

Plaintiff's Memo. at 15–16. A fair reading of the federal civil rights counts contained in LGSI's complaint, however, reveals that the plaintiff is seeking to challenge both the validity of the business privilege tax and the way in which it was administered in LGSI's particular case.

---

*er v. New England Tel. & Tel. Co.*, 947 F.2d 547, 548 (2d Cir.1991).

4. The principle of comity encompasses "a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in separate ways."

*Fair Assessment in Real Estate Ass'n v. McNary*, 454 U.S. 100, 112, 102 S.Ct. 177, 184, 70 L.Ed.2d 271 (1981) (quoting *Younger v. Harris*, 401 U.S. 37, 44–45, 91 S.Ct. 746, 750–51, 27 L.Ed.2d 669 (1971)).

5. The Court held that comity concerns prevent a plaintiff from recovering federal damages relief, and reserved the question whether the Act, standing alone, would require such a result. *Id.* at 107, 102 S.Ct. at 186.

In the first count, the plaintiff argues that the ordinance is constitutionally deficient in that it lacks the ascertainable standards required by the fourteenth amendment. Compl. ¶¶ 171–74. Moreover, LGSI contends that the defendants unlawfully conspired to enable the Township to impose and collect the tax without allowing taxpayers to exclude revenue generated out-of-state. Compl. ¶ 176. The second count contains LGSI's allegation that the defendants, by enacting and implementing the ordinance and initiating *Spielvogel I* and *Spielvogel II* pursuant to the ordinance, deprived the plaintiff of rights secured to it under the commerce clause. Finally, LGSI alleges in the third count that the defendants violated the fourteenth amendment by promulgating and enforcing an ordinance lacking ascertainable standards, and by prosecuting LGSI under the ordinance with malice and without probable cause.

First, we perceive no distinction between the way LGSI characterizes the nature of this action and the type of action barred by the relevant case law. LGSI's assertions amount to an allegation that the ordinance was administered in such a way as to deprive LGSI of its constitutional rights. And as the above-cited decisions make clear, such actions are not cognizable in federal court. Moreover, we are not persuaded by LGSI's argument that since the constitutional issues were litigated in the prior actions, the comity concerns that animated the *McNary* decision are not present here. LGSI's complaint asks us to declare the ordinances unconstitutional under the fourteenth amendment, and to find that the Township and its agents, by promulgating and enforcing the tax ordinances, acted to deprive LGSI of its constitutional rights. The result LGSI seeks would therefore represent the sort of highly intrusive federal interference with a state's taxation scheme that the Act was enacted to prevent. Accordingly, since LGSI is challenging the validity and administration of the ordinance, and since an adequate remedy exists at the state level, we are compelled to dismiss this action for want of subject matter jurisdiction.

*CONCLUSION*

Since we lack subject matter jurisdiction over Counts I–III, and since there lacks a basis on which we can exercise jurisdiction over the fourth count, LGSI's complaint will be dismissed. An appropriate order follows.