**NORTHWOOD CONSTRUCTION COMPANY, INC., Appellant,**

**v.**

**TOWNSHIP OF UPPER MORELAND.**

Commonwealth Court of Pennsylvania.

Argued June 13, 2002.

Decided July 19, 2002.

---

Stewart M. Weintraub, Philadelphia, for appellant.

Kathleen M. Thomas, Ambler, for appellee.

Before FRIEDMAN, Judge, and COHN, Judge, and MIRARCHI, Jr., Senior Judge.

OPINION BY Judge FRIEDMAN.

Northwood Construction Company, Inc. (Northwood) appeals from the November 15, 2001, order of the Court of Common Pleas of Montgomery County (trial court), which dismissed Northwood's motion for summary judgment and granted the cross-motion of Upper Moreland Township (Township), entering judgment against Northwood in the amount of $257,579.52 plus accrued penalties and interest. We affirm.

Northwood is a corporation with its principal place of business in the Township. Northwood performs construction management, general contracting and related business activities outside the Township at locations in Pennsylvania, Delaware, New Jersey and Maryland. (Second Stipulation of Facts, Nos. 1, 3, 4, 7.)

The Township has enacted a Business Privilege Tax (Tax) that applies to all businesses located within or doing business within the Township. Northwood engages in business that is subject to the Tax and has filed returns with the Township for the years 1995, 1996, 1997 and 1998. (Stipulation of Facts, Nos. 5–7.)

In its 1997 and 1998 filings, Northwood made no Tax payment, claiming that it was due a refund for overpayments in previous years. The Township denied Northwood's claim that it was due any refund and requested the payment of $257,579.52 plus interest and penalties for the years 1995 through 1998. In denying Northwood's claim, the Township refused to exclude Northwood's income that was subject to taxation in New Jersey, Delaware and Maryland from Northwood's gross receipts. The Township *did* exclude receipts for business activity outside the Township but within Pennsylvania where Northwood paid a privilege or similar tax to another entity. (Stipulation of Facts, Nos. 14–20; Second Stipulation of Facts, No. 20.)

Northwood filed a civil action with the trial court, seeking a refund of the Tax it paid on receipts from New Jersey, Delaware and Maryland and on receipts from intrastate business activity outside the Township where Northwood did *not* pay a privilege or similar tax to another entity. (R.R. at 16a–22a.) The Township filed a counterclaim, seeking the Tax due plus penalties and interest. (R.R. at 40a.) The parties then filed a Stipulation of Facts, a

Second Stipulation of Facts and motions for summary judgment.

In ruling on the matter, the trial court addressed two legal issues: (1) whether applying the Tax to the intrastate gross receipts of Northwood generated outside the Township violates the Township Code; and (2) whether applying the Tax to the interstate gross receipts of Northwood generated in New Jersey, Delaware and Maryland violates the Commerce Clause of the U.S. Constitution. The trial court determined that it was proper to apply the Tax in both cases. Northwood now appeals to this court.[1]

## I. Intrastate/Outside Township

As it did before the trial court, Northwood argues here that applying the Tax to intrastate gross receipts generated outside the Township violates the Township Code. We disagree.

### A. Township Code

Title 2, Chapter 7, Article 1, Section 1.04 of the Township Code (Code), states that every person "engaging in a business ... in the Township shall pay an annual Business Privilege Tax ... on his [or her] gross receipts...."[2] (R.R. at 47a.) Section 1.02(f) of the Code defines "gross receipts" as "property of any kind or nature received or allocable or attributable to any business ... without deduction therefrom:...." (R.R. at 44a.) The term "gross receipts" excludes "[r]eceipts upon which a

---

1. This court's scope of review of a trial court's decision to grant or deny a motion for summary judgment is limited to determining whether the trial court committed an error of law or abused its discretion. *City of York v. Schaefer Temporary Services, Inc.*, 667 A.2d 495 (Pa.Cmwlth.1995).

2. The Township enacted this provision pursuant to section 2 of The Local Tax Enabling Act (LTEA), Act of December 31, 1965, P.L. 1257, *as amended*, 53 P.S. § 6902, which states that townships of the first class, like the Township here, may levy, assess and collect such taxes as they shall determine on privileges within the limits of such political subdivision.

business privilege tax or similar tax has been imposed by another political subdivision by reason of the performance of the service or conducting the business in that political subdivision." (Section 1.02(f)(4) of the Code, R.R. at 44a.)

■ Northwood argues that sections 1.02(f) and 1.04 of the Code, when read together, mean that the Township may only tax gross receipts allocable or attributable to business conducted in the Township. However, the plain language of these provisions does not support such a construction. Section 1.04 imposes the Tax on an entity "engaging in a business in the Township," and Northwood engages in a business in the Township. Under section 1.02(f), the Tax is imposed on gross receipts "allocable or attributable to" Northwood's business. The provision does *not* limit the Tax to business conducted within the Township.[3]

### B. *Bona Fide* Offices

■ Northwood also argues that, under *Gilberti v. City of Pittsburgh,* 511 Pa. 100, 511 A.2d 1321 (1986), Northwood should be allowed to exclude receipts attributable to Northwood's *bona fide* offices outside the Township. Northwood contends that its on-site trailers at various construction sites outside the Township constitute *bona fide* offices under the regulations promulgated pursuant to the Pittsburgh Business Privilege Tax Ordinance. However, the Pittsburgh ordinance and the Pittsburgh regulations, which contain provisions dealing with *bona fide* offices, are not relevant here. The Township's Code does *not* contain any special provisions relating to *bona fide* offices.

The Township's Code *does* contain section 102(f)(4), a provision excluding from "gross receipts" any receipts upon which a business privilege tax or similar tax has been imposed by another political subdivision by reason of the performance of the service or conducting the business in that political subdivision. (R.R. at 44a.) Thus, *if* Northwood had a *bona fide* office in another political subdivision and, as a result, paid a business privilege or similar tax to that political subdivision, the Township would exclude related receipts from "gross receipts." In fact, here, the Township *did* exclude intrastate receipts for business activity outside the Township

---

**3.** In *Gilberti v. City of Pittsburgh,* 511 Pa. 100, 108–09, 511 A.2d 1321, 1326 (1986) (emphasis added), our supreme court stated:

Maintaining a business office in the City is an exercise of a privilege "within the limits" of the taxing district, and, thus, a tax can thereupon be levied.... [T]he tax ... is levied only upon a privilege exercised within the City, to wit maintenance of a business office, and the fact that the amount of tax is dependent upon the taxpayer's gross receipts, *including receipts from services performed outside the City,* does not undermine the legitimacy of the tax....

[H]aving a place of business within the City enables the taxpayer to have a base of operations from which to manage, direct, and control business activities occurring both inside and outside the City limits. Further, the in-City office provides a place from which to solicit business, accept communications, conduct meetings, store supplies, and perform office work. All of these activities are, in the usual course, necessary to any business operation. *This is so irrespective of whether the business performs services at job sites outside of the City.*

In recognition of this, we believe the legislature has provided for the City to collect a tax upon the privilege of having a place of business in the City, and *the measure of that tax is not to be so limited as to ignore the contribution to out-of-City activities provided by maintaining a base of operations within the City.*

where Northwood paid a business privilege or similar tax to another entity.

Moreover, in *G.A. & F.C. Wagman, Inc. v. Manchester Township*, 112 Pa.Cmwlth. 357, 535 A.2d 702, 704 (1988), where the local ordinance exempted from the business privilege tax "an office ... regularly maintained by the taxpayer, outside the limits of the [township]" this court held that the provision applied only to *permanent* offices outside the township. As stated, the Township's Code does not contain a similar provision; however, even if it did, Northwood's *temporary* on-site trailers would not constitute *permanent* offices outside the Township. Therefore, Northwood would *not* be entitled to the exemption.

■ Finally, Northwood argues that, according to *Township of Lower Merion v. QED, Inc.*, 738 A.2d 1066, 1071 n. 6 (Pa. Cmwlth.1999), *appeal denied*, 565 Pa. 680, 775 A.2d 811 (2001), section 8 of The Local Tax Enabling Act[4] (LTEA) allows for a business privilege tax exemption where a company has more than one base of operations. That is not true. The footnote in *Township of Lower Merion* states, "Section 8 of the LTEA ... has been interpreted by the courts to provide that the taxpayer must receive credit for gross receipts taxes *paid* to another municipality where the base of operations exists and from the receipts generated by that office." *Id.* (emphasis added). As indicated above, in this case, the Township *did* exempt from taxation the gross receipts of Northwood that were taxed in another political subdivision.

## II. Interstate Commerce

Northwood next argues that applying the Tax to gross receipts generated in

New Jersey, Delaware and Maryland violates the Commerce Clause of the U.S. Constitution. We disagree.

The Commerce Clause provides that Congress shall have the power to "regulate Commerce ... among the several States." U.S. Const., Art. I, § 8, cl. 3. Courts have held that this express grant of power contains a negative command, known as the dormant Commerce Clause, which prohibits certain state taxation even when Congress has failed to legislate on the subject. *Philadelphia Eagles Football Club, Inc. v. City of Philadelphia*, 758 A.2d 236 (Pa. Cmwlth.2000), *appeal granted in part*, 564 Pa. 472, 769 A.2d 443 (2001).

Early U.S. Supreme Court cases held that interstate commerce was wholly immune from state taxation. *Id.* However, in *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977), the Court abandoned this approach and articulated a four-part test for determining the validity of state taxation under the Commerce Clause:

1. The tax must be applied to an activity that has a substantial nexus with the state;

2. The tax must be fairly apportioned to the taxpayer's activity;

3. The tax must not discriminate against interstate commerce; and

4. The tax must be fairly related to benefits provided by the state.

*Philadelphia Eagles*, 758 A.2d at 250 (citing *Complete Auto Transit* ).

Northwood concedes that there is a substantial nexus here between Northwood's business activities and the Township's Tax. (Northwood's brief at 37.) However,

4. Act of December 31, 1965, P.L. 1257, *as* *amended,* 53 P.S. § 6908.

Northwood questions the validity of the Township's Tax based on the other three elements of the test.

## A. Apportionment

■■■ The test of apportionment is avoidance of multiple taxation or the risk of multiple taxation. *Philadelphia Eagles.* A properly apportioned tax must be both internally and externally consistent. *Id.*

Internal consistency is preserved when the imposition of a tax identical to the one in question by every other state would add no burden to interstate commerce that intrastate commerce would not also bear. Internal consistency does not preclude multiple states from taxing the same transaction so long as the portion of the income taxed by each state is not taxed by another state. "This test asks nothing about the degree of economic reality reflected by the tax, but simply looks to the structure of the tax at issue to see whether its identical application by every State in the Union would place interstate commerce at a disadvantage as compared with commerce intrastate."

External consistency, on the other hand, looks to the economic justification for the state's claim upon the value taxed, to discover whether the tax reaches beyond the portion of value that is fairly attributable to economic activity within the taxing state. The question is whether the state has taxed only that portion of the revenues from the interstate activity which reasonably reflects the in-state component of the activity being taxed.

*Id.* at 250–51 (citations and footnote omitted).

■■■ First, the Tax here is internally consistent. If imposed in every other state, there would be an allocation of gross receipts to avoid multiple taxation. Section 1.02(f)(9) of the Code states,

The Collector shall promulgate rules and regulations setting forth methods of allocation of gross receipts for such cases where the gross receipts of a business in its entirety are not subject to tax imposed by this Ordinance by reason of the provisions of the Commerce Clause of the United States Constitution or under the Constitution of the Commonwealth of Pennsylvania.

(R.R. at 45a.) Pursuant to section 1.02(f)(9), the Township has promulgated a regulation with an allocation formula that applies to persons "engaged in interstate commerce, having places of business in more than one State." (Northwood's brief, Exh. C.) Thus, where a company has a place of business in another state and, as a result, is subject to a business privilege tax in the other state, there would be an allocation of gross receipts between the states, thereby avoiding a multiple business privilege tax.[5]

■■■ Second, the tax here is externally consistent. The Township taxes only that portion of a company's revenues from interstate activity that reasonably reflects

5. Northwood argues that the trial court erred in failing to apply this provision to Northwood. However, the trial court noted that Northwood failed to provide credible evidence that it had a place of business in another state. (Trial court op. at 10 n. 2.)

Northwood also argues that the Tax does not avoid multiple taxation because Northwood's gross receipts from out-of-state activities are already taxed by other states. However, Northwood does not claim that the other tax is for the privilege of maintaining a business office in the other state.

the company's maintenance of a permanent business office in the Township. In other words, the Township can justify a tax on the privilege of maintaining an office within the Township where, from that office, a company is able to manage, direct and control *all* of its interstate business activities. *See Gilberti.*

## B. Discrimination

 A state may not impose a tax that discriminates against interstate commerce by providing a direct commercial advantage to local business. *Philadelphia Eagles.* States are barred from discriminating against foreign enterprises competing with local businesses and from discriminating against commercial activity occurring outside the taxing state. *Id.* A tax that, by its terms or operation, imposes greater burdens on out-of-state goods or activities than on competing in-state goods or activities is unlawfully discriminatory under the Commerce Clause and will be struck down. *Id.*

The Tax here does *not* impose a greater burden on out-of-state activities than on competing in-state activities. The Tax imposes the same millage rate on gross receipts from both in-state and out-of-state activities. Moreover, as indicated above, the Tax does not allow for multiple taxation where a company is also taxed for the privilege of maintaining a business office in another state.[6]

## C. Fair Relation

 The Commerce Clause demands a fair relation between a tax and the benefits conferred upon the taxpayer by the state. *Id.*

The test is whether the tax is reasonably related to the extent of taxpayer contact with the state, since it is the activities or presence of the taxpayer in the state that may properly be made to bear a just share of state tax burden. This prong is closely related to the nexus requirement. Generally, if the business has the requisite nexus with the state, then the tax meets the fourth factor simply because the business has enjoyed the opportunity and protections which the state has afforded it.

The fair relation prong does not require a detailed accounting of the services provided to the taxpayer on account of the activity being taxed, nor is a state limited to offsetting the public costs created by the taxed activity. Interstate commerce may thus be made to pay its fair share of state expenses and "contribute to the cost of providing all governmental services, including those services from which it arguably receives no direct 'benefit.'" The "just share of state tax burden" includes sharing in the cost of providing "police and fire protection, the benefit of a trained work force, and 'the advantages of a civilized society.'"

*Id.* at 254 (citations omitted).

 Along with the privilege of maintaining its office in the Township, Northwood enjoys certain governmental services. This is enough to establish a fair relation between the Tax on gross receipts from out-of-state activities and benefits conferred by the Township.

Accordingly, we affirm.

---

**6.** Northwood argues that the Tax discriminates against interstate commerce because, under section 1.02(f)(4) of the Code, there is no tax on intrastate gross receipts where a company has paid a business privilege tax in another political subdivision. However, under section 1.02(f)(9) of the Code, if Northwood had an out-of-state business office and, as a result, was subject to a business privilege tax in another state, there would be an allocation of gross receipts.

## ORDER

AND NOW, this 19th day of July, 2002, the order of the Court of Common Pleas of Montgomery County, dated November 15, 2001, is hereby affirmed.