856 A.2d 789

NORTHWOOD CONSTRUCTION COMPANY, Appellant,

v.

TOWNSHIP OF UPPER MORELAND, Appellee.

Supreme Court of Pennsylvania.

Argued Oct. 20, 2003.

Decided Sept. 2, 2004.

464

Jonathan Steven Liss, Esq., Stewart M. Weintraub, Esq., Drew Alexander Morris, Philadelphia, for Northwood Construction Company, Inc.

Bryan Edward Barbin, Esq., Harrisburg, for amicus curiae City of Scranton and Scranton School District.

Lee Allen Zoeller, Esq., Diann L. Smith, *pro hac vice*, Philadelphia, for amicus curiae Council on State Taxation.

Kathleen Marie Thomas, Esq., George B. Ditter, Esq., Ambler, for Upper Moreland Township.

Stephen Mark Pincus, Pittsburgh, for Pennsylvania State Association of Township Commissioners.

Christine M. Alvarez, Esq., Philadelphia, for amicus curiae City of Bethlehem.

Charles M. Means, Esq., Pittsburgh, for amicus curiae Pennsylvania League of Cities and Municipalities.

BEFORE: CAPPY, C.J., and CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and LAMB, JJ.

## OPINION

Justice NIGRO.

We granted allowance of appeal in this case to consider whether the Commonwealth Court erred in concluding that Appellee Township of Upper Moreland (the "Township") could impose a Business Privilege Tax ("BPT") on 100% of the gross receipts of Appellant Northwood Construction Company ("Northwood"), which is located in the Township but performs a substantial amount of work outside of the Township. For the following reasons, we conclude that the court erred insofar as it found that the Township's taxation of receipts generated from Northwood's out-of-state work did not violate the Commerce Clause of the United States Constitution, and therefore reverse that portion of the Commonwealth Court decision. In all other respects, we affirm.

Northwood is a business corporation with its principal place of business in the Township. Its primary business activities are construction management and general contracting, and it conducts those activities throughout Pennsylvania as well as in Delaware, New Jersey and Maryland.

The Township has a Business Privilege Tax Ordinance (the "Ordinance"), which imposes a Business Privilege Tax ("BPT") on any person "engaging in a business ... in the Township." Ordinance § 1.04. The amount of the BPT is 3.5 mills (.0035) on the gross receipts of the business, subject to certain specified exclusions, including an exclusion for gross receipts on which a "business privilege tax or similar tax has been imposed by another political subdivision by reason of the performance of the service or conducting the business in that

political subdivision." *Id.* § 1.02(f)(4) (the "Exclusionary Provision").

Northwood filed tax returns with the Township for the years 1995, 1996, 1997 and 1998. In those returns, Northwood reported as taxable gross receipts that portion of its gross receipts that were attributable to its business activity in the Township. It also paid a BPT in connection with its 1995 and 1996 returns, but it made no BPT payment in 1997 and 1998, asserting that it was due a refund for overpayments of the BPT in prior years. Specifically, Northwood claimed that in 1995 and 1996, the Township had erroneously imposed a BPT on (1) gross receipts from certain in-state activities outside of the Township that the Township could not tax, as well as (2) 100% of the gross receipts derived from out-of-state activities. The Township, however, not only denied Northwood's refund claims, but also took the position that Northwood had *underpaid* the BPT in all four years at issue and demanded an additional BPT payment of $257,579.52 plus interest and penalties.

To resolve this dispute, Northwood filed a civil action in the trial court, seeking to recover the BPT it claimed to have overpaid. The Township, in turn, filed a counterclaim, asking the trial court to award it the $257,579.52 that it claimed Northwood still owed for the tax years in question. Northwood and the Township subsequently filed cross-motions for summary judgment. In conjunction with those motions, the parties filed two stipulations of facts and also certified that there were no material facts in dispute and that their dispute could therefore be resolved as a matter of law. After oral argument, the trial court denied Northwood's motion and granted the Township's motion, awarding the Township the $257,579.52 plus penalties and interest that it had requested.

On appeal, the Commonwealth Court affirmed. *Northwood Construction Co., Inc. v. Township of Upper Moreland*, 802 A.2d 1269 (Pa.Commw.2002). In its opinion, the court first rejected Northwood's argument that applying the BPT to gross receipts generated from activities outside the Township violated the Ordinance. As the court explained, the plain

language of the Ordinance provides that the Township will impose the BPT on any entity "engaging in a business ... in the Township," Ordinance § 104, and states that the Township will calculate the BPT on the entity's gross receipts, which it defines as "cash, credits, property of any kind or nature, received or allocable or attributable to any business" of the entity. *Id.* § 102(f). While Northwood contended that these two Ordinance provisions together convey that only the gross receipts *generated from business in the Township* are subject to the BPT, the court disagreed, emphasizing that the Ordinance's definition of gross receipts subject to the BPT is not so limited, but rather provides for the taxation of income "attributable to *any* business" of the taxed entity. *Id.* (emphasis added).

The Commonwealth Court next addressed Northwood's argument that receipts attributable to its on-site trailers at construction sites outside the Township should be excluded from the BPT, because those trailers constituted "*bona fide* offices" and this Court's decision in *Gilberti v. City of Pittsburgh*, 511 Pa. 100, 511 A.2d 1321 (1986), established that a municipality cannot impose a BPT on receipts attributable to *bona fide* offices outside of the municipality.[1] However, the court rejected this argument, explaining that *Gilberti* involved a tax ordinance that specifically provided that income from *bona fide* offices outside of the municipality would be excluded from the municipality's BPT and as such, in no way established a general rule that receipts from *bona fide* offices outside a municipality can *never* be taxed by the home municipality. Moreover, it noted that the Township's Ordinance

---

1. Northwood maintains that its trailers constitute *bona fide* "field offices," essentially because they (1) have telephone, fax and utility services, copier facilities, and restroom facilities, (2) are used by Northwood employees for employee meetings as well as for meetings with customers, subcontractors, and vendors, (3) house job records, drawings, specifications schedules, and employee records for employees working the site, and (4) are subdivided into three separate offices/conference rooms. Northwood Brf. at 2–3 (citing Second Stipulation of Facts at ¶¶ 8–14). Moreover, Northwood points out that at each site, it employs full time on-site personnel to conduct the daily operations required to manage the construction activity. *Id.* at 3 (citing Second Stipulation of Facts at ¶ 15).

contains no *bona fide* office provision and thus, no such limitation applies in the instant case. *Northwood Construction Co.*, 802 A.2d at 1273 ("[T]he Pittsburgh ordinance [at issue in *Gilberti*] and the Pittsburgh regulations, which contain provisions dealing with *bona fide* offices, are not relevant here."). The court reiterated that the Ordinance provides that the Township will not tax receipts for which a BPT is paid to another political subdivision, Ordinance § 1.02(f)(4) (no taxation of receipts for which a "business privilege tax or similar tax has been imposed by another political subdivision"), and noted that, in certain instances, this could exempt receipts that were generated from a taxpayer's *bona fide* office outside the Township. However, the court made clear that there was no basis on which Northwood could argue that the Ordinance prohibits the taxation of *all* receipts generated from *bona fide* offices outside the Township in the absence of a *Gilberti*-style *bona fide* office provision.[2]

The Commonwealth Court also rejected Northwood's argument that the Township could not tax 100% of its gross receipts because the Commonwealth Court's prior decision in *Township of Lower Merion v. QED, Inc.*, 738 A.2d 1066 (Pa.Commw.1999), established that section 8 of the Local Tax Enabling Act (the "LTEA"),[3] 53 P.S. § 6908, allows for a BPT exemption where a company has more than one base of operations. The court explained that *Township of Lower Merion* merely states that "Section 8 of the LTEA ... has been interpreted by the courts to provide that the taxpayer

2. The court also commented that *G.A. & F.C. Wagman, Inc. v. Manchester Twp.*, 112 Pa.Cmwlth. 357, 535 A.2d 702, 704 (1988), involved a Manchester County ordinance that excluded from Manchester Township's BPT all receipts associated with an "office ... regularly maintained by the taxpayer, outside the limits of the [township]," and then hypothesized how that ordinance would affect Northwood if it were applied in the Township. Stating that it held in *G.A. & F.C. Wagman* that the Manchester Township BPT exclusion applied only to receipts from *permanent* offices outside of the township, and noting that Northwood's construction site trailers were *temporary* rather than *permanent* offices, it concluded that even if the Manchester ordinance exclusion were applicable in the Township, such an exclusion would not provide Northwood with the tax relief it sought.

3. Act of December 31, 1965, P.L. 1257, 53 P.S. §§ 6901–6924.

must receive a credit for gross receipts taxes *paid* to another municipality where the base of operations exists and from receipts generated by that office." 802 A.2d at 1274 (alteration in original) (quoting *Township of Lower Merion*, 738 A.2d at 1071 n. 6).[4] As the Township had exempted from taxation any of Northwood's gross receipts that had been taxed in another political subdivision within Pennsylvania,[5] the court concluded that the Ordinance was completely in accord with section 8 of the LTEA as interpreted in *Township of Lower Merion*.

The Commonwealth Court next turned to Northwood's argument that the Township's taxation of 100% of the receipts generated from Northwood's construction sites in New Jersey, Delaware and Maryland violated the Commerce Clause of the United States Constitution.[6] As an initial matter, the court rejected Northwood's contention that the tax violated the constitutional mandate of fair apportionment, which requires both "internal consistency" and "external consistency." According to the court, the tax was "internally consistent," *i.e.*, it

4. In support of this statement regarding how the courts have interpreted section 6908, the *Township of Lower Merion* court cited to *Gilberti* and the Commonwealth Court opinion in *Airpark Int'l I v. Interboro School District*, 677 A.2d 388 (Pa.Commw.1996), *aff'd* 558 Pa. 1, 735 A.2d 646 (1999) (plurality). However, *Gilberti* did not even mention section 6908, much less analyze its provisions. In contrast, the Commonwealth Court's *Airpark Int'l* decision does discuss section 6908, but it also indicates that the provision's effect is much more limited than *Township of Lower Merion* suggests. *See Airpark Int'l*, 677 A.2d at 394–96 (explaining, among other things, that section 6908 primarily addresses caps on tax *rates* and applies only to certain specified types of taxes). In any event, Northwood has not developed any meaningful argument regarding section 6908 in its brief to this Court, *see* Northwood Brf. at 38 (only briefly referencing section 6908 and *Township of Lower Merion*), and thus, we will not address that section further in this opinion.

5. The parties stipulated that "Northwood paid a privilege tax or similar tax to certain jurisdictions within Pennsylvania, such as Bensalem, Philadelphia, and Warminster, and the Township has excluded receipts from those jurisdictions for purposes of computing Northwood's receipts subject to the BPT." Second Stipulation of Facts at ¶ 20, R.R. 11a.

6. The Commerce Clause states that "Congress shall have Power ... [t]o regulate Commerce with foreign nations, and among the several States...." U.S. CONST., art. I, § 8, cl. 3.

would not result in more than one state taxing the same portion of income if it were applied in every state, because the Township had promulgated regulations requiring the apportionment of receipts for taxpayers "engaged in interstate commerce, having places of business in more than one State." [7] *Northwood Construction Co.*, 802 A.2d at 1275; *see also* Regulations under Article I, "Business Privilege Tax," Chapter 7, Title 2, Upper Moreland Township Code Providing for the Allocation of Gross Receipts in the Case of Businesses with Multi–State Offices Engaged in Interstate Commerce ("Regulations"), Northwood Brf., Exh. G. The court also held that the tax was "externally consistent," *i.e.*, it did not tax more than that portion of the revenues from the interstate activity which reasonably reflected the in-state component of the activity being taxed. In so holding, the court explained that "the Township can justify a tax on the privilege of maintaining an office within the Township where, from that office, a company is able to manage, direct and control *all* its interstate business." 802 A.2d at 1276 (emphasis in original).

The Commonwealth Court also rejected Northwood's claims that the tax violated the Commerce Clause (1) by providing a direct commercial advantage to local business and (2) because there is no fair relation between the tax and the benefits conferred upon the taxpayer by the state. With respect to the former, the court stated that the tax did not impose a greater burden on out-of-state activities than it did on in-state activities not only because the millage rate for in-state and out-of-state activities was the same, but also because any time another state imposed a BPT on the taxpayer's receipts, the Township Regulations ensured that the taxed receipts would be allocated to that other state and the Township would

---

7. The Township promulgated these regulations pursuant to section 1.02(f)(9) of the Ordinance, which provides that:

The [Business Tax Office of the Township] shall promulgate rules and regulations setting forth methods of allocation of gross receipts for such cases where the gross receipts of a business in its entirety are not subject to tax imposed by this Ordinance by reason of the provision of the Commerce Clause of the United States Constitution or under the Constitution of the Commonwealth of Pennsylvania. Ordinance § 1.02(f)(9).

exclude those receipts from its tax. *See* Regulations. With respect to the latter argument, the court explained that there *was* a fair relation between the tax and the in-state activities because "[a]long with the privilege of maintaining its office in the Township, Northwood enjoys certain governmental services." 802 A.2d at 1276.

On appeal to this Court, Northwood asserts that the Commonwealth Court erred in concluding that (1) the Ordinance, by its terms, permits the imposition of the BPT on gross receipts from activities performed outside the Township, and (2) the imposition of such a tax was within the Township's authority under the LTEA. It further asserts that the Commonwealth Court erred in concluding that the Township's imposition of the BPT on 100% of its out-of-state receipts did not violate the Commerce Clause.

■ Addressing each of these arguments in turn, we first reject Northwood's assertion that the Ordinance, by its terms, does not permit the Township to tax its gross receipts from activities performed outside the Township. As the Commonwealth Court noted, section 1.04 of the Ordinance provides that:

> Every person engaging in a business, trade, occupation, profession or vocation in the Township shall pay an annual Business Privilege Tax for the tax year at the rate of three and one-half (3.5) mills *on his gross receipts;* provided no tax will be levied on any person who has registered with the Township and whose gross receipts are Two Thousand Nine Hundred Dollars ($2,900.00) or less, provided that a tax return is filed.

Ordinance § 1.04 (emphasis added). The Ordinance further defines "gross receipts" as:

> [C]ash, credits, property of any kind or nature, received or allocable or attributable to *any* business, or services rendered, or commercial or business transactions without deduction therefrom on account of the cost of property sold, material used, labor, service or other costs, interest, or discount paid, or

any other expense.

Ordinance § 1.02(f) (emphasis added).

Northwood argues that these provisions only authorize the Township to tax "gross receipts allocable or attributable to any business *conducted within the Township.*" Northwood Brf. at 27 (emphasis added); *see also id.* ("By it own terms, the Ordinance only imposes tax upon cash or credits 'allocable or attributable' to any business or services rendered in the Township."). However, like the Commonwealth Court, we are at a loss to discern Northwood's suggested meaning from the plain terms of the statute. While the Ordinance is clear that it only permits taxation of entities that conduct business in the Township, *see* Ordinance § 1.04, it also plainly provides that, once it is determined that the entity *does* conduct business in the Township, the amount of the tax may be calculated on the "gross receipts" attributable to "*any* business" of the entity. *Id.* § 1.02(f) (emphasis added). Moreover, while the Ordinance excludes from "gross receipts" any receipts on which the taxpayer has already paid a BPT or similar tax to another political subdivision, *see id.* § 1.02(f)(4), this Exclusionary Provision is not broad enough to shield from taxation all receipts "allocable or attributable" to business outside the Township, because it is dependent upon whether or not the other subdivisions choose to impose a tax, and if so, whether that tax can be characterized as "a [BPT] or similar tax." *Id.* As such, in spite of the Exclusionary Provision, the Ordinance plainly provides that the BPT is calculated on at least certain "gross receipts" without reference to where they are generated and thus, Northwood's argument to the contrary is meritless.

 Northwood next contends that even if the intent of the Ordinance is to impose the BPT on gross receipts generated by business activity outside the Township, any such tax exceeds the Township's authority under the LTEA and is therefore unenforceable. Again, we disagree.

 "In Pennsylvania, the power to tax is statutory and must be derived from an enactment of the General Assembly."

*Independent Oil and Gas Ass'n of Pennsylvania v. Board of Assessment Appeals of Fayette County,* 572 Pa. 240, 814 A.2d 180, 182 (2002). The extent to which the Township may implement a BPT is set forth in section 6902 of the LTEA, which provides in pertinent part that political subdivisions:

> may, in their discretion, by ordinance or resolution, for general revenue purposes, levy, assess and collect or provide for the levying, assessment and collection of such taxes as they shall determine on persons, transactions, occupations, privileges, subjects and personal property within the limits of such political subdivisions....

53 P.S. § 6902.

In *Gilberti v. City of Pittsburgh,* 511 Pa. 100, 511 A.2d 1321, this Court considered the extent of a municipality's taxing power under section 6902. In that case, the City of Pittsburgh (the "City") imposed a BPT on a Pittsburgh-based architectural firm (the "Firm") pursuant to the Pittsburgh Code (the "Code"), which stated that "[e]very person engaging in any business in the City shall pay an annual tax ... on each dollar of volume of the gross annual receipts thereof." 511 A.2d at 1323 (quoting Pittsburgh Code § 243.02). The Firm took issue with the City's application of the tax to receipts generated from services performed outside the City, such as on-site supervision of construction projects outside the City limits.[8] Specifically, the Firm asserted that such taxation exceeded the City's authority under the LTEA to tax "transactions" and "privileges" that are "within the limits" of the City. 53 P.S. § 6902. This Court agreed that "out-of-City transactions are not transactions within the City, and the LTEA has conferred power upon the City to tax only transactions 'within the limits' of the City." 511 A.2d at 1324. Accordingly, we refused to sustain the tax at issue "as an exercise of the City's power to tax 'transactions.'" *Id.* However, we disagreed with the Firm that the City could not tax receipts from services performed outside the City pursuant to its

---

8. Notably, there was no claim in *Gilberti* that the City's tax violated the Commerce Clause as none of the receipts at issue apparently arose out of interstate commerce. *See id.* at 1325.

power under the LTEA to tax "privileges" that are "within the limits" of the City. We acknowledged that "where the City imposes a tax upon a privilege, the tax cannot be levied directly upon exercises of the privilege that occur outside of the taxing district." *Id.* at 1325. We further recognized that the tax at issue "operate[d] in such a manner as to, in effect, tax revenues from certain transactions that occur wholly outside the City." *Id.* at 1326. Nevertheless, we explained that the "tax remains one that is levied only upon a *privilege* exercised within the City, to wit maintenance of a business office, and the fact that the amount of tax is dependent upon the taxpayer's gross receipts, including receipts from services performed outside the City, does not undermine the legitimacy of the tax." *Id.* (emphasis added). We went on to explain that:

In support of this conclusion it is to be emphasized that the plain language of the Enabling Act provides for taxes to be levied upon privileges within the City. In enacting such a provision, the legislature surely recognized that the exercise by a taxpayer of the privilege of doing business within a taxing jurisdiction constitutes far more than the sum of individual transactions and activities which are consummated or performed within the territorial limits of the taxing entity. Indeed, having a place of business within the City enables the taxpayer to have a base of operations from which to manage, direct, and control business activities occurring both inside and outside the City limits. Further, the in-City office provides a place from which to solicit business, accept communications, conduct meetings, store supplies, and perform office work. All of these activities are, in the usual course, necessary to any business operation. This is so irrespective of whether the business performs services at job sites outside of the City.

*Id.* at 1326. As such, we specifically concluded that "the legislature has provided for the City to collect a tax upon the privilege of having a place of business in the City" and that "the measure of that tax is not to be so limited as to ignore the

contribution to out-of-City activities provided by maintaining a base of operations within the City." *Id.*

Under this analysis, it is clear that the Township's imposition of its BPT on gross receipts generated from business activity outside the Township did not run afoul of the LTEA. Like the Firm in *Gilberti,* Northwood maintains its principal place of business within the taxing jurisdiction. While the taxation of Northwood's gross receipts "operates in such a manner as to, in effect, tax revenues from certain transactions that occur wholly outside of the [Township]," such a tax, as we stated in *Gilberti,* "remains one that is levied only upon a privilege exercised within the City, to wit, maintenance of a business office and the fact that the amount of tax is dependent upon the taxpayer's gross receipts, including receipts from services performed outside the [Township], does not undermine the legitimacy of the tax." *Id.* at 1326. Thus, just as we found with respect to the ordinance in *Gilberti,* the Ordinance here is a legitimate exercise of the Township's power under the LTEA to tax Northwood for the privilege of maintaining a principal place of business in the Township, which it could use to "solicit business, accept communications, conduct meetings, store supplies, and perform office work" and from which it could "manage, direct, and control business activities occurring both inside and outside the City limits." *Id.*

Northwood nevertheless argues that the LTEA does not empower the Township to impose the BPT on receipts generated from work outside of the Township, because unlike the situation in *Gilberti,* Northwood's activities within the Township do not significantly contribute to that out-of-Township work.[9] Specifically, Northwood contends that unlike the Firm

9. This argument appears at the very end of Northwood's brief, almost as an afterthought. *See* Northwood Brf. at 37. Nevertheless, it is Northwood's only argument that even attempts to explain why the language of the LTEA should be interpreted as empowering Pittsburgh to enact the taxation scheme at issue in *Gilberti,* but not empowering the Township to enact the BPT at issue here.

Northwood's primary argument regarding *Gilberti* is that it is not controlling here because the Ordinance is "not nearly as expansive as

in *Gilberti*, it maintains offices outside the Township, namely its temporary on-site trailers at construction sites, from which it exercises primary control over its out-of-Township activities. It therefore reasons that while the Firm's control over out-of-City activities from its central office in *Gilberti* may have been sufficient under the LTEA to justify the imposition of a BPT on the receipts generated from the Firm's out-of-City activities, the very limited control that Northwood exercises over out-of-Township activities from its Township office does not justify such a sweeping BPT.

However, *Gilberti's* conclusion that the LTEA empowered the City to tax the Firm's out-of-City receipts did not, as we read the decision, hinge on the fact that the Firm did not have any other offices outside of the City. Rather, it was grounded on the understanding that the Firm's central office provided a "base of operations" from which it exercised control over its

the [*Gilberti*] ordinance." Northwood Brf. at 32. However, we fail to see how this argument works in Northwood's favor. As an initial matter, we have already rejected Northwood's factual premise that unlike the *Gilberti* ordinance, the Ordinance here only permits the Township to tax those receipts allocable or attributable to business conducted within the Township. *See supra* pp. 8–9. Moreover, even assuming *arguendo* that Northwood was correct that the Ordinance here is "not nearly as expansive as the [*Gilberti*] ordinance," Northwood Brf. at 32, that fact would make it *more* likely that the Township had power under the LTEA to enact the Ordinance, not less so. Accordingly, Northwood's argument in this regard is simply meritless.

Northwood goes on to argue that if we conclude that *Gilberti* is relevant to our analysis as to the scope of the Township's powers under the LTEA, we should find that the trailers Northwood maintains on its construction sites are *bona fide* offices and that the receipts from those trailers are therefore subject to an exemption under the *Gilberti* ordinance. However, this argument again misses the mark. Simply put, our reliance on *Gilberti* in concluding that the Township's enactment of the BPT at issue here was within the scope of its authority under the LTEA has nothing to do with the text of the ordinance in *Gilberti* and in no way rests on a conclusion that the text of the *Gilberti* ordinance is applicable here. Rather, we merely reiterate that, pursuant to *Gilberti:* (1) the LTEA authorizes a municipality to tax a business whose principal office is within its borders for the *privilege* of maintaining that office within the municipality, and (2) the measure of that tax can include receipts from work outside the municipality, based on a recognition that the maintenance of "a base of operations" within the municipality contributes to a business's ability to conduct activities outside of the municipality. 511 A.2d at 1326.

operations. *Gilberti,* 511 A.2d at 1326. Moreover, we agree with the Commonwealth Court in *G.A. & F.C. Wagman* that the supervision of projects from temporary on-site offices simply "does not negate the fact that the root of all of the company's business is at its sole permanent business head-quarters."[10] 535 A.2d at 705–06. As such, we reject North-wood's attempt to characterize its "privilege" of maintaining a Township office as somehow less meaningful than the Firm's "privilege" of maintaining a City office in *Gilberti* and there-fore reject its assertion that *Gilberti* does not support a conclusion that its out-of-Township receipts are subject to the Township's BPT.[11]

Furthermore, we find significant here that the Ordinance contains the Exclusionary Provision, which provides that the Township will exclude from taxable gross receipts any receipts on which the taxpayer has already paid a BPT or similar tax to another political subdivision based on the taxpayer's per-

---

10. *G.A. & F.C. Wagman* involved a highway construction company that had its sole permanent office in Manchester Township, Pennsylvania, but performed the majority of its business outside of Manchester Township. Furthermore, individual projects of the company were "often supervised by temporary on-site offices," "many employees ha[d] little or no direct contact with the home office, and payments for services [were] often received outside the township." 535 A.2d at 705. In spite of these factual distinctions between the case and *Gilberti,* the court concluded that *Gilberti* was controlling because, as stated above, the factual differences did not "negate the fact that the root of all of the company's business [was] at its sole permanent business headquarters." *Id.* at 705–06.

11. Northwood alternatively urges us to overrule *Gilberti* and analyze the validity of the Township's BPT on receipts from its in-state, but out-of-Township, activities based on a test similar to that utilized in ascertaining whether taxes on interstate commerce conform with the federal constitutional dictates of the Commerce Clause. However, we decline to do so for two reasons. First, we are constrained by the doctrine of *stare decisis. See Commonwealth v. Tilghman,* 543 Pa. 578, 673 A.2d 898, 903 n. 9 ("The rule of *stare decisis* declares that for the sake of certainty, a conclusion reached in one case should be applied to those which follow, if the facts are substantially similar, even though the parties may be different."). Second, we are simply not at liberty to ignore the text of the LTEA, which *Gilberti* was interpreting, in favor of a judicially created construct based on constitutional principles, particularly where, as here, there has been no constitutional challenge to the LTEA.

formance of a service or conduct of business in that subdivision. Ordinance § 1.02(f)(4). Essentially, this provision ensures that to the extent that a taxpayer is exercising the privilege of conducting business in another political subdivision, and that other political subdivision concludes that the exercise of that privilege is sufficient to justify a BPT on the taxpayer's gross receipts from activity within its boundaries, *see Township of Lower Merion*, 738 A.2d at 1071 n. 6 (recognizing that business can have more than one "base of operations"), the Township will cede the right to tax those receipts to the subdivision. *See supra* n. 5 (parties' stipulation that Township has, in fact, *not* imposed its BPT on receipts from other jurisdictions in the Commonwealth on which Northwood has already paid a BPT or similar tax). Thus, as a practical matter, the Township's exertion of its authority under the LTEA is limited and will not encroach upon any other political subdivision's authority or ability to tax a business functioning within its boundaries.

Having rejected Northwood's statutory claims, we turn to its contention that the Commonwealth Court erred in finding that the Township's imposition of the BPT on 100% of Northwood's interstate receipts did not violate the Commerce Clause of the United States Constitution. On this claim, we agree with Northwood that it is entitled to relief.

■ The United States Supreme Court has established a four-part test to be applied in ascertaining whether a state or local tax violates the Commerce Clause. *See Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977). Pursuant to that test, a tax will be invalidated under the Commerce Clause unless it:

1) is applied to an activity with a substantial nexus with the taxing state;

2) is fairly apportioned;

3) does not discriminate against interstate commerce; and

4) is fairly related to benefits provided by the state.

*Id.* at 279, 97 S.Ct. 1076. Here, Northwood does not argue that the Township's BPT applies to activities without a sub-

stantial nexus with Pennsylvania. However, it contends that the tax fails to satisfy the remaining three prongs of the *Complete Auto* test. Namely, it asserts that the tax is not fairly apportioned, discriminates against interstate commerce, and is not fairly related to the benefits provided by Pennsylvania. As we agree that the tax is not fairly apportioned, we need not address the other two *Complete Auto* prongs on which Northwood relies.

This Court recognized in *Philadelphia Eagles Football Club, Inc. v. City of Philadelphia* that the "central purpose behind the apportionment requirement is to ensure that each state taxes only its fair share of an interstate transaction." 823 A.2d 108, 128–29 (2003) (plurality) (quoting *Goldberg v. Sweet*, 488 U.S. 252, 260, 109 S.Ct. 582, 102 L.Ed.2d 607 (1989) (citation omitted)); *id.* at 138 (Castille, J., dissenting). As the *Philadelphia Eagles* plurality explained: "When a state taxes more than its fair share, it creates the risk that the portion of value by which it exceeded its fair share will be taxed again by a state properly laying claim to its fair share of the value being taxed, thereby subjecting the taxpayer to multiple taxation." *Id.* at 129 (citing *Oklahoma Tax Comm'n v. Jefferson Lines*, 514 U.S. 175, 184, 115 S.Ct. 1331, 131 L.Ed.2d 261 (1995)).

In order to be "fairly apportioned," a tax must be both "internally consistent" and "externally consistent." *See Goldberg*, 488 U.S. at 260–61, 109 S.Ct. 582. A tax is internally consistent if it is "structured so that if every taxing jurisdiction were to apply the identical tax, the taxpayer would not be subjected to a risk of double taxation." *Philadelphia Eagles*, 823 A.2d at 131 (plurality) (citing *Goldberg*, 488 U.S. at 261, 109 S.Ct. 582). Thus, the internal consistency inquiry "focuses on the text of the challenged statute and hypothesizes a situation where other States have passed an identical statute." *Goldberg*, 488 U.S. at 261, 109 S.Ct. 582.

Here, as stated above, the Ordinance authorizes the Township to impose a BPT on the gross receipts of "[e]very person engaging in a business, trade, occupation, profession or

vocation in the Township." Ordinance § 1.04; *see also* § 1.02(f). "Gross receipts" are defined as any "cash, credits, property of any kind or nature, received or allocable or attributable to any business," *id.*, but exclude "[r]eceipts upon which a business privilege tax or similar tax has been imposed by another political subdivision by reason of the performance of the service or conducting of business in the political subdivision." *Id.* § 1.02(f)(4). The Ordinance also requires that the Business Tax Office in the Township "promulgate rules and regulations setting forth methods of allocation of gross receipts for such cases where the gross receipts of a business in its entirety are not subject to tax imposed by this Ordinance by reason of the ... Commerce Clause or [the Pennsylvania Constitution]." Ordinance § 1.02(f)(9); *see* full text of provision at *supra* n. 7. Here, as noted previously, the Township adopted Regulations, entitled "Regulations ... Providing for the Allocation of Gross Receipts in the Case of Businesses with Multi–State Offices Engaged in Interstate Commerce." Those Regulations state:

2. *Allocation.* In the case of transactions involving interstate commerce, in conformity with the commerce clause of the United States Constitution, the apportionment of gross receipts will be made upon the following formula:

(Receipts within Commonwealth of PA × 100%) +

(Receipts without Commonwealth of PA × apportionment factor) =

Gross Receipts that Tax is applied to.

Regulations at ¶ 2. Moreover, the Regulations further provide that:

The apportionment factor shall be the product of the averaging of the total of the following percentages:

(i) Wages, salaries, commissions, and other compensation in Township, as a percentage of total wages, salaries, commissions and other compensation.

(ii) Receipts in Township as a percentage of total receipts.

(iii) Value of the tangible property and real property owned or leased and situated within the Township as a

percentage of total tangible personal and real property owned or leased.

*Id.*

As stated above, in assessing internal consistency, we must consider whether, if every state applied the Ordinance and the accompanying Regulations, taxpayers would be subjected to a risk of multiple taxation. Considering the Ordinance and Regulations, but *initially excluding from consideration the Ordinance's Exclusionary Provision*, it would appear that there would be such a risk.[12] Indeed, in initially providing for the taxation of *all* receipts of *any* entity that engages in *any* business in the Township, the Ordinance authorizes the Township to tax not only businesses with permanent offices in the Township, but also any businesses that come into the Township to, *inter alia*, sell products, provide services, or merely transport goods. Meanwhile, the Regulations only require the Township to apply its apportionment formula to a taxpayers' receipts, and thereby exclude certain out-of-state receipts from taxation, "in the Case of Businesses *with Multi–State Offices* Engaged in Interstate Commerce." Regulations (emphasis added); *see also* Regulations ¶ 1 (requiring that the Township apportion receipts generated by businesses "having *places of business* in more than one State") (emphasis added); Township Brf. at 20 ("[T]his regulation applies to businesses with [*bona fide* ] offices or locations outside of the Township").

12. We consider the internal consistency of the Ordinance and Regulations both with and without the Exclusionary Provision not only to emphasize the import of the Exclusionary Provision, but also because Northwood's argument that the Ordinance is internally inconsistent largely ignores the Exclusionary Provision. Northwood apparently takes this approach because it asserts that the Township itself has largely ignored the Exclusionary Provision as it has not excluded from its BPT those receipts on which Northwood has paid taxes to other states. *See infra* n. 18. However, whether or not the Township has erred in failing to provide Northwood with certain exclusions for receipts on which Northwood has paid taxes to other states, we will not follow Northwood's lead and ignore the Exclusionary Provision in our internal consistency analysis as the provision is an integral part of the Township's taxation scheme and thus, must be considered in ascertaining whether that scheme, if applied in every state, would result in multiple taxation.

Thus, assuming as we must that all states have adopted this same taxation scheme, any state in which a taxpayer conducts business would only apply the Regulations' apportionment formula to exclude from taxation those receipts generated from activities in other states *in which the taxpayer has an office.*[13]

The risk of multiple taxation in this scheme (again, absent the Exclusionary Provision) can be exemplified by considering a hypothetical taxpayer that has a single office in Pennsylvania, but provides services in New Jersey and Delaware as well as Pennsylvania. Because the taxpayer "engages in business" in all three states, all three states could, under the universally applicable Ordinance, impose a BPT on 100% of the taxpayer's gross receipts. The Regulations would apparently require New Jersey and Delaware to apportion their tax to take into account the receipts attributable to the business office in Pennsylvania, but New Jersey would not be required to exclude from its tax the receipts generated in Delaware and, likewise, Delaware would not be required to exclude the New Jersey receipts from its tax.[14] Meanwhile, the Regulations would not require Pennsylvania to conduct any apportionment,

13. Northwood notes that the Regulations state that the Township is to allocate receipts whenever a taxpayer has a "place of business" in another state and further asserts that its out-of-state construction trailers constitute qualifying "place[s] of business." However, the Township takes the position that the Regulations only require it to allocate a taxpayer's receipts when the taxpayer has a *bona fide* office outside of Pennsylvania and given the title of the Regulations, which refers to "Multi–State–*Offices,*" we accept this interpretation for purposes of this appeal. *See* Regulations (emphasis added); Township Brf. at 20 ("Under the Trial Court's ruling that the trailers used by Northwood do not constitute bona fide offices, there was no location outside of the Township which would trigger the use of the apportionment regulations."). Of course, our acceptance of the Township's interpretation ultimately renders the Regulations more susceptible to invalidation under the Commerce Clause.

14. It is not entirely clear under the Regulations that New Jersey and Delaware would even be required to apportion their tax, because taken at face value, the Regulations only demand that receipts for businesses with "Multi–State Offices" be allocated, *see* Regulations, and our hypothetical business has only a single office in Pennsylvania. However, whether or not New Jersey and Delaware apportioned the taxpayer's receipts pursuant to the Regulations, our analysis under the internal

as the taxpayer has no offices in New Jersey or Delaware and the Regulations only require apportionment of receipts generated from *offices* in other states. Accordingly, although only Pennsylvania would tax the Pennsylvania portion of the taxpayer's receipts, the New Jersey and Delaware portions of the receipts would be taxed in *all three jurisdictions*.

It is therefore clear that if the Ordinance did not also exclude from taxable gross receipts those receipts on which the taxpayer has already paid a BPT or similar tax to another jurisdiction "by reason of the performance of the service or conducting the business in that political subdivision," Ordinance § 1.02(f)(4), it would not survive constitutional scrutiny under the internal consistency test. However, we agree with the Township that the existence of the Exclusionary Provision ultimately ensures that there is no risk of multiple taxation under the hypothetical circumstances in which internal consistency is considered. *Cf. Goldberg*, 488 U.S. at 264, 109 S.Ct. 582 (finding that provision in Illinois telecommunications tax statute that gives tax credits for taxes paid to other jurisdictions "operates to avoid multiple taxation"); Walter Hellerstein, *Is "Internal Consistency" Foolish: Reflections on an Emerging Commerce Clause Restraint on State Taxation*, 87 Mich. L.Rev. 138, 182–83 (1988) (hereinafter "Hellerstein") ("[A] tax that appears to be internally inconsistent will nevertheless pass the 'internal consistency' test if the taxing state grants a credit for taxes paid to other states on the same tax base."). Essentially, by requiring the Township to exclude from taxation receipts that are taxed by another political subdivision "by reason of the performance of the service or conducting the business in that political subdivision," the Exclusionary Provision ensures that the Ordinance, if applied in every state, would not permit two states to tax the same receipts, but rather, would only permit the state in which any given receipts are generated to tax those receipts.[15] Accord-

consistency test is essentially the same. *See infra* n. 16 and accompanying text. That is, in the absence of the Exclusionary Provision, the tax would be internally inconsistent.

**15.** If the state in which certain receipts were generated chose *not* to tax those receipts, the risk of multiple taxation would recur because under

ingly, adding the effect of the Exclusionary Provision to our earlier hypothetical: (1) Pennsylvania would exclude receipts from business conducted in New Jersey, as well as business conducted in Delaware, (2) New Jersey would exclude Delaware receipts in addition to the Pennsylvania receipts already excluded, and (3) Delaware would exclude New Jersey receipts in addition to the already-excluded Pennsylvania receipts.[16] In this way, applying the Ordinance and Regulations in their entirety, it is clear that no multiple taxation would occur. Thus, the Exclusionary Provision ultimately saves the Ordinance and Regulations from unconstitutionality under the "internal consistency" prong of the fair apportionment test.

■ We do not reach the same conclusion when considering the "external consistency" prong of the fair apportionment test. Whether a tax is "externally consistent" is determined by applying a "subjective test that asks whether a state taxed only that 'portion of the revenues from the interstate activity which reasonably reflects the instate component of the activity being taxed.'" *Philadelphia Eagles*, 823 A.2d at 131 (plurality) (quoting *Goldberg*, 488 U.S. at 262, 109 S.Ct. 582). To determine whether a state is taxing economic activity that occurred in other jurisdictions, a court must look to the state's economic justification for its tax, *id.* (citing *Jefferson Lines*, 514 U.S. at 185, 115 S.Ct. 1331), and must ascertain whether there is a "rational relationship between the income attributed to the [s]tate and the intrastate values" of the business being taxed. *Id.* (quoting *Hunt–Wesson, Inc. v. Franchise Tax Bd. of California*, 528 U.S. 458, 464, 120 S.Ct. 1022, 145 L.Ed.2d 974 (2000) (citations omitted)). Ultimately, the court will find that a tax violates the Commerce Clause if an objecting party

those circumstances, the other states in which the taxpayer conducted business could tax the non-taxing state's receipts, without exclusion. However, we need not be concerned with such a variation as the internal consistency test requires us to hypothesize the complete replication of the challenged state's tax in other states and thus, we must presume that all states levy and collect the taxes to which they are entitled under the tax scheme at issue.

16. In addition, if New Jersey and Delaware had not already excluded Pennsylvania receipts pursuant to the Regulations, *see supra* n. 14, they would be required to do so pursuant to the Exclusionary Provision.

"demonstrates by clear and cogent evidence that the income attributed to the state either is 'out of all appropriate proportion to the business transacted by the [taxpayer] in that state,'" *id.* (quoting *Hans Rees' Sons, Inc. v. North Carolina ex rel. Maxwell,* 283 U.S. 123, 135, 51 S.Ct. 385, 75 L.Ed. 879 (1931)), has "led to a grossly distorted result" for the taxpayer, *id.* (quoting *Norfolk & Western Ry. Co. v. Missouri State Tax Comm'n,* 390 U.S. 317, 326, 88 S.Ct. 995, 19 L.Ed.2d 1201 (1968)), or is "inherently arbitrary" or "produced an unreasonable result," *id.* (quoting *Moorman Mfg. Co. v. Bair,* 437 U.S. 267, 274, 98 S.Ct. 2340, 57 L.Ed.2d 197 (1978)).

In the instant case, Northwood has adequately established that income attributed to the Township is "out of all appropriate proportion to" the business transacted in the Township and has no "rational relationship" to Northwood's business in the Township. There is apparently no dispute that Northwood engaged in interstate commerce and that a significant portion of Northwood's receipts in the relevant tax years were generated at construction sites in Delaware, New Jersey and Maryland.[17] Nevertheless, the Township has imposed its BPT on 100% of Northwood's receipts from interstate commerce, without making any attempt to allocate those receipts for in-state versus out-of-state activity.[18]

In finding that the external consistency requirement was satisfied, the Commonwealth Court merely stated as follows:

17. By way of example, of Northwood's nearly $35 million in gross receipts reported on its 1996 federal tax return, approximately $15.5 million were attributable to Pennsylvania, $15.4 million were attributable to New Jersey, $3 million were attributable to Delaware and $1.1 million were attributable to Maryland. *See* Stipulation of Facts at ¶ 20, R.R. 6a–7a. Similarly, of Northwood's nearly $42 million in gross receipts reported on its 1998 federal tax return, approximately $27 million were attributable to Pennsylvania, $14 million were attributable to New Jersey, and $813,000 were attributable to Delaware. *Id.*

18. As stated above, *supra* n. 12, the Township has not utilized the Exclusionary Provision to exclude from Northwood's taxable gross receipts any receipts on which taxes were paid to other states, apparently taking the position that any tax that Northwood paid on such receipts did not constitute a "business privilege tax or similar tax ... imposed by another political subdivision by reason of the performance of the service or conducting of business in the political subdivision." Ordinance § 1.02(f)(4).

The Township taxes only that portion of a company's revenues from interstate activity that reasonably reflects the company's maintenance of a permanent business office in the Township. In other words, the Township can justify a tax on the privilege of maintaining an office within the Township, where, from that office, a company is able to manage, direct and control *all* of its interstate business activities. *See Gilberti.*

*Northwood Construction Co.*, 802 A.2d at 1275–76 (emphasis in original). This analysis, however, is wholly inadequate. As an initial matter, the Commonwealth Court's reliance on *Gilberti* in support of its conclusion that the tax at issue is constitutionally valid is fundamentally flawed as *Gilberti* did not involve a constitutional analysis under the Commerce Clause, but rather merely considered whether the LTEA authorized a municipality to tax receipts generated outside its boundaries. Indeed, whether a tax that may be authorized under the LTEA nevertheless violates the Commerce Clause is a completely separate issue that, contrary to the apparent belief of the Commonwealth Court, cannot be resolved without reference to the governing constitutional principles.

Moreover, on constitutional grounds, we simply cannot accept the Commonwealth Court's ultimate conclusion that Northwood's maintenance of its primary business office in the Township permits the Township to tax 100% of Northwood's receipts generated in connection with interstate activity. The Commonwealth Court characterized the tax as one on the privilege of maintaining an office in the Township, and thus, concluded that it taxes in-state activity only. However, when considering the constitutionality of a gross receipts tax, it is the activities that *generate* those gross receipts that are determinative in an apportionment analysis as it is only the receipts generated from the in-state component of the underlying activity that the Township may properly tax under constitutional apportionment principles. *See Jefferson Lines,* 514 U.S. at 190, 115 S.Ct. 1331 (gross receipts tax is "simply a variety of tax on income, which [is] required to be apportioned *to reflect the location of the various interstate activities by*

*which it was earned* ") (emphasis added); *Philadelphia Eagles,* 823 A.2d at 133 (plurality) (focusing on the "underlying activity that generated the ... receipts" in ascertaining the states to which receipts should be allocated for purposes of BPT); *General Motors Corp. v. City & County of Denver,* 990 P.2d 59, 71 (Colo.1999) ("In the context of ... taxes on gross receipts, apportionment must take into account the location *where revenue is generated.*") (emphasis added).

The Township essentially takes the position that it is under no obligation to allocate Northwood's receipts among the other states in which Northwood conducts business, because the Exclusionary Provision ensures that there is no risk of multiple taxation. In forwarding this argument, the Township essentially ignores Supreme Court precedent that the "central purpose behind the apportionment requirement is to ensure that each state taxes only its fair share of an interstate transaction," *Goldberg,* 488 U.S. at 260, 109 S.Ct. 582 and instead cites the opinion of the Commonwealth Court below for the proposition that "[t]he primary test of apportionment is avoidance of multiple taxation." Township Brf. at 20 (citing 802 A.2d at 1275). However, we cannot be similarly dismissive of the controlling Supreme Court jurisprudence. While the Supreme Court has characterized the principle of fair apportionment as "the lineal descendent of *Western Live Stock's* prohibition of multiple taxation," *Oklahoma Tax Comm'n,* 514 U.S. at 184, 115 S.Ct. 1331 (referring to *Western Live Stock v. Bureau of Revenue,* 303 U.S. 250, 58 S.Ct. 546, 82 L.Ed. 823 (1938)), the external consistency requirement ultimately mandates that a tax not "reach[ ] beyond that portion of value that is fairly attributable to economic activity within the taxing State," irrespective of whether there is a genuine risk of multiple taxation. *Id.* at 185, 115 S.Ct. 1331; *see Southern Pac. Transp. Co. v. Arizona, Dep't of Revenue,* 202 Ariz. 326, 44 P.3d 1006, 1012 (Ariz.Ct.App.2002) (rejecting "proposition that a state's tax on interstate commerce must be deemed externally consistent unless the aggrieved taxpayer establishes that a multiple tax burden actually exists"); Hellerstein, 87 Mich. L.Rev. at 186 ("Wholly apart from its role in

preventing multiple taxation, the fair apportionment criterion serves to limit the territorial reach of state power by requiring that the state's tax base corresponds to the taxpayer's in-state presence."). As such, even assuming *arguendo* that the Township is correct that the Exclusionary Provision eliminates the risk of multiple taxation,[19] we disagree that the Township's apportionment obligations are therefore satisfied. Rather, we conclude that the appropriate inquiry remains whether the Township has taxed only that "portion of the revenues from the interstate activity which reasonably reflects the instate component of the activity being taxed." *Goldberg*, 488 U.S. at 262, 109 S.Ct. 582. Here, as explained above, the Township is plainly taxing more than that "portion of the revenues from [Northwood's] interstate activities which reflect the instate component of the activity being taxed," *id.*, as it is taxing *all* of the revenues from Northwood's interstate activities.[20] Accordingly, we hold that the tax does not satisfy the external consistency prong of *Complete Auto* and is therefore unconstitutional.

In sum, we hold that the Ordinance and Regulations are within the Township's authority under the LTEA, but nevertheless find them unconstitutional under the Commerce

**19.** Of course, Northwood does not agree with this premise as it contends that in spite of the Exclusionary Provision, its receipts have been taxed twice because the Township has refused to provide it with the exclusions to which it is entitled. *See supra* nn. 12, 18.

**20.** Although application of the Exclusionary Provision should, in theory, reduce the extent to which interstate receipts are taxed, it has obviously not done so here. Northwood asserts that this is due, at least in part, to the Township's failure to apply the provision properly. *See supra* nn. 12, 18. However, the record in this case is insufficient to determine whether Northwood is correct in this regard and in any event, whether the Township should have given Northwood certain exclusions is immaterial to our resolution of whether the tax that the Township has actually imposed violates the Commerce Clause.

Moreover, even assuming that the Township should have given Northwood some exclusions for receipts on which taxes were paid to other states under the Exclusionary Provision, we feel compelled to note that we have no confidence that such exclusions would fully resolve any external consistency problem, because their availability is entirely dependent on the whims of other states, which may or may not impose a BPT or similar tax on receipts that are properly allocated to them.

Clause of the United States Constitution. Accordingly, we reverse the decision of the Commonwealth Court below insofar as it concluded that the Commerce Clause does not require apportionment of Northwood's receipts, but affirm it in all other respects.

Former Justice LAMB did not participate in the decision of this case.